# Domingus *v*. The State.

## *Indictment for Murder.*

1. *Acts or declarations as part of res gestæ.*—To make an act or de-·claration admissible as evidence on the principle of *res gestæ*, time is not the only material criterion, but the act or declaration must be relevant to the main transaction, or fact under inquiry—must be connected with it, or in some manner explain it; otherwise it is irrelevant and inadmissible.

2. *Evidence tending to show preparation for attack.*—The evidence showing that the defendant, who was a town marshal, had a difficulty with deceased on Saturday, arresting him for the breach of an ordinance, for which a writ of arrest was sued out against defendant, and the preliminary trial set for Monday; on which day, during a personal encounter between defendant and a brother of the deceased, growing out of the former difficulty, the deceased interfered, and was shot and killed; the evidence for the defense tending to show preconcert between the brothers and their relatives to attack the marshal, and the surviving brother admitting that he had a pistol when the difficulty began, it is competent for the defense to show, also, that he had a box of pistol cartridges, as relevant to the question of preparation for the attack; and for this purpose to prove that a bystander, immediately after the difficulty, handed him a box of cartridges, saying, "Here is your box of cartridges," and that he accepted them.

3. *Charge invading province of jury.*—On a trial for murder, a charge instructing the jury that the right to strike and kill, under circumstances hypothetically stated, "is not to be too readily inferred by the jury," is an invasion of their province.

4. *Same.*—So, also, a charge which instructs them that, on the facts stated, "they may reasonably infer that the defendant was not then in imminent danger," is an invasion of their province.

5. *Homicide "pursuant to previously formed design."*—A charge which predicates murder of a homicide because committed "pursuant to a previously formed design," not distinguishing between a former design resulting from malice, and one resulting from sudden passion aroused by adequate provocation, or from the necessity and instincts of self-preservation, is erroneous.

From the Circuit-Court of Dale, on change of venue from Henry. Tried before the Hon. JESSE M. CARMICHAEL.

The defendant in this case, John L. Domingus, was indicted, jointly with Parker Powell, for the murder of John M. Stringer, by shooting him with a pistol; and being tried separately, after a change of venue to Dale county, was convicted of murder in the second degree, and sentenced to the penitentiary for the term of ten years. The killing occurred in the town of Dothan, on Monday morning, October 14th, 1889. The defendant was marshal of the town, Parker

[Domingus v. The State.]

Powell was deputy-marshal, and the deceased was the manager and weigher of the Alliance Warehouse in the outskirts of the town. On the preceding Saturday, the defendant had arrested the deceased for the violation of a town ordinance in running drays without license; and in effecting the arrest, the deceased was handcuffed and beaten. Before leaving town that evening, he made affidavit charging the defendant with an assault with intent to murder him; and the warrant of arrest being executed, the preliminary trial was set by the magistrate for the ensuing Monday morning. At the conclusion or adjournment of the trial on that morning, a large crowd being in attendance on it, B. (or Bee) Stringer, a brother of the deceased, passed the defendant on the street, and heard him speaking of the difficulty between him and the deceased on Saturday; and an altercation at once ensued between them. "After the damned lie had passed," as several witnesses expressed it, the parties rushed together, Stringer having his knife in his hand, but the defendant struck him on the head with his club, knocked him down after several blows, and beat him until he became unconscious. As the crowd rushed up to them, George M. Stringer, the deceased, ran up, holding his revolver in his hand, and-unwrapping his handkerchief, which had been wound around it; and he and the defendant then rushed together, each firing one shot from his pistol, and then striking each other on the head with their pistols. In the *melee* which ensued, ten or twelve shots were fired; the deceased and ·one Walker were killed, and four persons were wounded—the defendant, the father and a brother of the deceased, and one Peter Few. The evidence showed, without conflict, that the deceased was struck in the forehead and killed by the second shot fired by the defendant. As to the particulars of the altercation between B. Stringer and the defendant, as well as most of the other material facts, there was great conflict in the testimony; but this is not necessary to a proper understanding of the points decided by this court. The defendant introduced evidence tending to show that the deceased, his father and brothers came to town on Monday morning by agreement, prepared and intending to make an attack on him and Powell, and also evidence of threats against him made by the deceased on Saturday evening; and while the witnesses for the prosecution denied any preconcert or agreement between the deceased and his friends, and the prosecution adduced evidence of indefinite threats by the defendant against the deceased, B. Stringer admitted that he had a pistol when the difficulty began.

"W. T. Calhoun, a witness for the State, testified as follows: 'I knew deceased, and I was at Dothan on the day of the

difficulty. Deceased had been weighing cotton at the ware-house, but was not then.' The State proposed to prove that the deceased, a short while before the difficulty, told witness where he was going. Defendant objected, but the court over-ruled his objection, and allowed the witness to testify. Wit-ness then said, 'I saw deceased between Bureleshaw's and Skipper's, and he said, 'I am now on my way back to the warehouse;' this in reply to a remark of mine.' And de-fendant excepted."

Another ruling on evidence is thus set out in the bill of ex-ceptions: "Arthur Matthews was then introduced by de-fendant, and testified as follows: 'I saw B. Stringer a few moments after the difficulty, in Crawford's dry-goods store. His hair was bloody. I did not notice how bad his head was hurt.' Defendant proposed to show by said witness a few moments after the difficulty, and while witness was dressing his head, a party went to B. Stringer and said, 'Here is your box of cartridges,' and that B. Stringer accepted them. Court refused to allow to make said proof, and defendant ex-cepted."

The defendant excepted to several charges given by the court to the jury, and among them the following, as set out in the transcript: (2.) "While there may be cases where the de-fendant has the right to anticipate his adversary, and is not compelled to stand still and wait for an advantage to be taken of him, in an emergency rendered eminently dangerous by complicated circumstances or surroundings, the right is not to be readily inferred by the jury, if the danger is not appar-ently imminent, which would reasonably justify a resort to it, the defendant does so at his own hazard, his own personal fear or timid cowardice will not excuse his undue precipitation of action, if he deliberately armed himself with a deadly weapon, with the intent to kill and take the life of his ad-versary, without an impending necessity which imperiously requires such an act for the prompt preservation of his own life to prevent grievous bodily harm, he is guilty of murder." (3.) "If the whole evidence shows that the threats of the de-ceased were not at all vindictive or specific, and that his approach to where the defendant and B. Stringer were en-gaged in a difficulty (if they believe from the evidence that said B. Stringer and defendant were engaged in a difficulty), was not hostile; then the jury may reasonably infer that the defendant was not in imminent danger at that time." (11.) "If a party dangerously armed makes a hostile demonstration with an undue advantage, he is guilty of murder if he slay his ad-versary pursuant to a previously formed design to use his

weapon in an emergency; previous preparation for an encounter. evinces deliberation and premeditation, and unexplained is evidence of express malice."

H. L. MARTIN, for appellant.

WM. L. MARTIN, Attorney-General, for the State.

McCLELLAN, J.—Very many exceptions were reserved on the trial below to the rulings of the court both on the admissibility of testimony and in respect of charges given and refused. These exceptions have been severally examined and found to be without merit, except in two particulars as to the competency of evidence, and those addressed to the action of the trial court in giving charges 2, 3 and 11, at the instance. of the State; and these rulings only will be discussed.

1. The testimony of the witness Calhoun, to the effect that a short time before the fatal encounter George Stringer, the deceased, stated that he "was on his way back to the warehouse," was improperly allowed to go to the jury. However short a time this statement was made before the killing, it does not appear to have had any connection with the main fact under inquiry, and hence could not be of the *res gestæ* of the main transaction. Time alone is not a determining criterion when the question is whether a thing said or done is a part of a given transaction. The act done, or the statement made, may be immediately before or after the occurrence of the matter constituting the gist of the inquiry, and yet not have led up to, or resulted from the main fact, nor tend to throw light upon or give character to it; and, of consequence, bear no relation to, nor, in any sense, be a part of such main fact. The statement of Stringer appears to have been of this class. His remark, for aught that is in this record, was of the most casual kind—that he was returning to his place of business—a fact which does not appear to have been due to anything which had previously transpired between him and the defendant, nor to have led up to the subsequent occurrences, nor to have borne any relation whatever to anything that happened between the parties to the difficulty which resulted in his death. Yet, in view of the evidence tending to show previous threats on his part toward the defendant, we can not see but that this statement may have prejudiced the defendant. It might have minimized, in the minds of the jury, any advantage they might otherwise have accorded him on account of the threats which a tendency of the evidence goes to show were made by Stringer and communicated to the defendant,

[Domingus v. The State.]

which, in view of the fact that there is no pretense that this statement ever came to defendant's knowledge, would have been unjust and injurious to him.

2. We construe that part of the testimony of the witness Matthews which was excluded, as tending to show that Bee Stringer, between whom and Domingus this difficulty began, had a box of pistol cartridges about his person when the trouble arose. There was also evidence that he had a pistol. One of the issues on the trial was, whether Bee Stringer or Domingus brought on the difficulty. The former had come to Dothan, where the difficulty occurred, anticipating, as some of the evidence tends to show, a general fight between Domingus and Powell, who were marshals of the town, and George Stringer and his friends, George Stringer and the marshals having had trouble a day or two previously. It was, of course, competent for the defendant to show such expectation on the part of the Stringers, that they threatened trouble, and had prepared themselves for a difficulty on that day; and it is clear, we think, that the evidence which was excluded as to the box of cartridges went to show such preparation, and to give some color to the theory of the defense, that the difficulty was brought on by Bee Stringer in accordance with a previously formed purpose, and hence should have been allowed to go to the jury.

3. Charge numbered 2 given for the State is, in our opinion, invasive of the province of the jury, in that it declares they should *not readily infer* the right of a defendant to strike and kill on the state of facts which it hypothesizes, and upon which it assumes such right might exist. Whenever the jury are authorized to reach a given conclusion at all, it is a clear invasion of their right in that connection to charge that they must lean away from that conclusion, must be reluctant to arrive at it, or must "not readily infer," the right dependent upon it. Charge 2 was erroneous.

4. It is similarly invasive of the jury's right to tell them that, upon certain facts, they may *reasonably infer* the defendant was not in imminent peril at the time he fired the fatal shot. It is solely for the jury to determine whether any particular inference that may possibly be drawn from given facts is or is not a reasonable inference, and not for the court to substitute its judgment for theirs in passing upon the character of inferences afforded by the evidence. This is an infirmity of charge 3 given for the State. It is, perhaps, bad also for the further reason, that it confines defendant's right to strike to circumstances which involve *actual* imminent danger, when the right might exist also upon the reasonable appearance of such danger though it did not actually exist.

[Pate v. The State.]

5. Charge 11 given for the State is bad on the principles of law recently declared by this court in the case of *Hornsby v. State*, 10 So. Rep. 522, in that it predicates murder of a killing done "pursuant to a previously formed design," regardless of whether the formation and entertainment of such design resulted from malice, from sudden passion aroused by adequate provocation, or from the necessity and instincts of self-preservation.

Reversed and remanded.