We granted this petition for writ of certiorari to review whether the petitioner sufficiently preserved for review the trial court's refusal to instruct the jury on the law of self-defense and the use of force in effecting an arrest.
The petitioner, Maurice Pettway, was indicted and convicted for the offense of attempted murder, as proscribed by Ala. Code 1975, § 13A-6-2. He was sentenced to 20 years' imprisonment and was ordered to pay a $25 Victims' Compensation Fund assessment. The trial court suspended the execution of his sentence pending the outcome of his appeal. The Court of Criminal Appeals, 586 So.2d 307, affirmed the trial court's judgment with an unpublished memorandum opinion:
 "AFFIRMED BY MEMORANDUM. The appellant's charges relating to the use of force by the appellant [are] without merit because the evidence did not indicate that the appellant was attempting to arrest the victim when he fired the shot. The appellant was neither on duty nor within his jurisdiction."
In his application for rehearing to the Court of Criminal Appeals, Pettway presented an additional statement of facts and requested that the court incorporate those facts in an opinion on rehearing. Ala.R.App.P. 39(k). The Court of Criminal Appeals denied his request. Pettway included that statement of additional facts in his petition to this Court for writ of certiorari, and we found it to be sufficient for our review.[1]
The basic facts contained in Pettway's statement of facts as supplemented pursuant to Rule 39(k), Ala.R.App.P., are essentially undisputed. Pettway, at the time of the incident forming the basis of the criminal *Page 1198 
proceeding, was a City of Prichard police officer.
The victim, Earnest Clever Murphy, closed his shop, went home, and after he and his wife got into an argument about his not going out with her, he left the house in his wife's automobile and later called the mother of Patricia Watkins and told her that he might come by her house. Pettway and his sister had dropped Watkins off at her house in Prichard, and when Murphy arrived at the house, he saw Watkins get out of Pettway's car. Murphy told Watkins that he wanted to talk to her. Murphy and Watkins noticed that Pettway's car had stopped down the street from her house, and Murphy testified that Watkins had said, "He's waiting to see what you're going to do." Moments later, after Murphy left Watkins's house, he noticed that a car was following his car very closely. He testified that he pulled into a parking lot and that the car passed him. Murphy then pulled out, sped to catch the car, and put on his bright lights "to get [the] tag number."
At this point, the evidence becomes conflicting. Murphy testified that he noticed that the car he was following had stopped, but that he was unable to stop and that he struck the car in the rear. He stated that immediately after the impact, he saw a flash, heard a bang, and knew that he had been shot. He stated that when he got out of his car, Pettway was holding a gun to his head. After the incident, Murphy observed Pettway talking on a "walkie-talkie," but could not recall what he said.
In contrast, the defense put on evidence that after Pettway stopped, Murphy deliberately rammed Pettway's automobile twice from behind. Pettway further testified that after he and his sister jumped from his car, he approached the driver's door of Murphy's car and that he said "Sir, it's the police — get out of the car." According to Pettway, Murphy initially refused to get out of the car, and then pushed the door open, striking Pettway with the door of the car. Pettway testified that he then saw Murphy's right hand coming toward the window holding something shiny that he believed to be a gun; at that point, Pettway admittedly fired his gun and shot Murphy but claimed that he had fired in self-defense.
After he shot Murphy, Pettway allegedly patted him down and pushed him toward Pettway's car. Once they got to the car, Pettway used his walkie-talkie to inform the police of a "signal 18," the code for a shooting. He then gave Murphy a towel and allegedly told him to "calm down or you'll bleed to death."
Shortly thereafter, police officers from Mobile and Prichard arrived at the scene of the incident. The officers searched Murphy's car, but found no weapons or contraband. They searched the surrounding area and found a chrome-plated wrench five feet and one inch from the blood marks on the street.
 I
We first consider whether the Court erred in refusing to instruct the jury on the use of force in self-defense.[2] Even though he did not prepare a written instruction and request that the trial judge give it to the jury, Pettway claims that his objection was sufficiently specific to preserve the question for review, and he cites Matkins v. State,497 So.2d 201 (Ala. 1986), in support of his argument.
The State contends that the trial court's refusal to instruct the jury on the law of self-defense was not properly preserved for appellate review, because Pettway's counsel did not direct the court to any particular pattern jury form, did not prepare any written *Page 1199 
instructions, or did not otherwise outline the substance of any instruction that he wished the court to give.
We have reviewed the record and find the following: After the close of the evidence, out of the presence of the jury, but before closing arguments and the trial court's instructions to the jury, Pettway's attorney orally requested that the trial judge give the "general charges . . . in a case like this" and that he also instruct the jury on the presumption of innocence and "[a]lso the use of force in defense of a person." Pettway's attorney stated:
 ". . . You asked me to do some research on this. And I've taken some copies from the [C]ode concerning use of force in defense of a person. Also use of force making an arrest or preventing an escape.
 "The second or third charge that I wish to ask . . . be presented and here are copies of it. You have the [C]ode there. We feel the facts [have] been presented on point concerning use of force in the defense of a person. And also in the actions that were performed by Officer Pettway at the time, use of force in making an arrest or preventing an escape.
". . . .
 ". . . And the testimony has been presented concerning whether or not Officer Pettway was getting ready to make an arrest and the individual was patted down. He told [him] he was a police officer and [to] get out of the car. And we feel that the fact[s] that have been presented in the case would warrant that a charge be given in use of force in making an arrest because it's reasonable to assume that —"
The record shows that the Court then inquired whether the defendant was making an arrest at the time of the incident, and whether he was in uniform, and then the following occurred:
 "THE COURT: Was he acting in his capacity as a police officer at this time?
 "MR. MONROE [defense counsel]: That's our position. And also it says that if any individual believes that that individual is a police officer. It's in this section, Judge. Section 13A-3-26.
 "THE COURT: Was he making an official arrest or was he making a citizen's arrest? Do we have to make a distinction between the two?
 "MR. MONROE: No, sir. What the section says and if I may, says if an individual has reason to believe that the person is a police officer."
Pettway's attorney, during the charge conference, requested the court to instruct the jury on resisting arrest, and cited the court to § 13A-3-28.
At the end of the charge conference, the court advised counsel on the general subjects on which he would instruct the jury, and the following occurred:
 "MR. MONROE: . . . Judge, [are] you going to give the charge concerning defense of force —
 "THE COURT: I do not plan on charging on that at all. As [to the charge of] resisting arrest, because I cannot see any shred of evidence where an arrest had taken place for [there to be] a resistance of the arrest. I will not charge as to self-defense. I will — what was the other one you requested?
 "MR. MONROE: The one use of force in making an arrest. And the other one was use of force in resisting arrest is prohibited.
"THE COURT: I will not give either of them.
"MR. MONROE: And we note our exceptions.
 "THE COURT: I will give you the opportunity to further except after I give the charge, besides your exceptions being noted at this point.
"MR. MONROE: Thank you, Judge."
After the court orally instructed the jury and before the jury began its deliberations, Pettway's attorney again noted his objection, to which the court responded:
 "The court as indicated before did not plan nor did the court give those instructions that you requested regarding [self-defense]. I think that the totality of the *Page 1200 
charge is a correct statement of the law."
Based on a review of the record, and especially the record of the proceedings at the charge conference, we are of the opinion that the petitioner, even though he did not request the instructions in writing, preserved for review the issue of his entitlement to an instruction on self-defense. Ex parte McCall,594 So.2d 628 (Ala. 1991). Matkins v. State, 497 So.2d 201
(Ala. 1986).
It is apparent from the colloquy between Pettway's counsel and the court that the court was aware of the substance of the instructions that counsel was requesting, and the reasons why such instructions should be given under the particular facts of his case.
Rule 14, A.R.Cr.P.Temp. (now Rule 21.2, A.R.Cr.P.), states that "[n]o party may assign as error the court's . . . giving of an erroneous, misleading, incomplete, or otherwise improper oral charge, unless he objects thereto before the jury retires to consider its verdict, stating the matter to which he objects and the grounds of his objection." Based on our review of the record, much of which we have set out in this opinion, we find that petitioner's counsel complied with the requirements of this rule. The better practice, of course, would have been for trial counsel to have presented the court with a written instruction, but the record suggests that trial counsel gave to the trial court copies of the statutes upon which he wanted the jury instructed. Although this procedure is not a substitute for the presentation of a written instruction, we suggest that the trial judge could have insisted on counsel's presenting him with a written instruction that detailed exactly what he desired, so that the record would be complete. We do not commend the procedure used in this case, but from a reading of the colloquy, it is apparent that the trial judge not only understood what counsel was requesting him to instruct the jury on, but he also understood counsel's subsequent objection. Apparently the trial judge concluded, as did the Court of Criminal Appeals, that the theory of self-defense had no foundation in the evidence or in the law. We must disagree with the learned trial judge and the Court of Criminal Appeals on this issue.[3]
In King v. State, 478 So.2d 318 (Ala.Cr.App. 1985), the Court of Criminal Appeals stated the general rule regarding the court's duty to instruct the jury on the law of the case:
 "The general rule is that 'every accused is entitled to have charges given, which would not be misleading, which correctly state the law of his case, and which are supported by any evidence, however weak, insufficient, or doubtful in credibility.' Chavers v. State, 361 So.2d 1106, 1107 (Ala. 1978). If there is 'any evidence, however slight, tending to support' that the defendant acted in self-defense, the issue should be submitted to the jury. King v. State, 71 Ala. 1, 4 (1881). In most cases, the issue of self-defense is one of ultimate fact solely for determination by the jury, Domingus v. State, 94 Ala. 9, 11 So. 190
(1892), however 'unsatisfactory and inconclusive to the judicial mind' the evidence of self-defense may appear. Burns v. State, 229 Ala. 68, 70, 155 So. 561, 562 (1934)."
In order to determine whether the evidence is sufficient to necessitate an instruction and to allow the jury to consider the defense, we must view the testimony most favorably to the defendant. See Chavers, 361 So.2d 1106. If there is the slightest evidence tending to prove a hostile act which can reasonably be interpreted as placing Pettway, at the time of the shooting, in apparent imminent danger to life or other grievous bodily harm, then the matter of self-defense becomes a question for the jury. See Domingus v. State, 94 Ala. 9,11 So. 190 (1892).
We hold that a jury could find that a reasonable person, under the facts and circumstances in this case, would be justified in the belief that the use of force was *Page 1201 
necessary. We recognize that "the question is not merely what the defendant believed, but also, what did he have the right to believe," Ala. Code 1975, § 13A-3-23, and hold that the evidence in this case supported Pettway's right to believe that he was in imminent danger of bodily harm.
 "It is solely for the jury to determine whether any particular inference that may possibly be drawn from given facts is or is not a reasonable inference, and not for the court to substitute its judgment for theirs in passing upon the character of inferences afforded by the evidence."
Domingus v. State, 94 Ala. 9, 11 So. 190, 192 (1892).
Based upon the evidence before the jury in this case, the judge should have instructed the jury on the issue of self-defense.[4] Consequently, the judgment of the Court of Criminal Appeals is reversed, and the cause is remanded to the Court of Criminal Appeals with directions to remand it to the trial court for a new trial.
 II
Having found grounds for granting the defendant a new trial, it is unnecessary for us to address whether Pettway was entitled to an instruction on the use of force in effecting an arrest. However, in view of the fact that we are remanding the case for a new trial, we hereby state that, based on the record before us, the Court of Criminal Appeals did not err in finding that "[t]he appellant's charges relating to the use of force by the appellant [are] without merit because the evidence did not indicate that the appellant was attempting to arrest the victim when he fired the shot." We do not agree totally with the finding of that court, however, that "[t]he appellant was [not] within his jurisdiction." The evidence is clear that he was "[not] on duty," but, as we understand the law, he could have made an arrest outside of the city of Prichard, if within the county.[5]
In summary, we hold that the Court of Criminal Appeals erred in affirming the trial court's judgment regarding the requested jury instructions on self-defense, but we affirm the judgment of the Court of Criminal Appeals insofar as it holds that the evidence presented did not show that the petitioner was entitled to an instruction on the law relating to the use of force in effecting an arrest. The judgment is reversed, and the cause remanded for proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HORNSBY, C.J., and ALMON, SHORES, ADAMS, HOUSTON, STEAGALL, KENNEDY and INGRAM, JJ., concur.
[1] See Ex parte Moore, 493 So.2d 988 (Ala. 1986), in which this Court said that a petitioner who complies with Rule 39(k) "could, in effect, ask the Court of Criminal Appeals to adopt an opinion which would be favorable to his position"; see, also, H. Henzel, Complying with Rule 39(k), A.R.A.P. (How toSucceed on "Cert"), 45 Ala. Law. 270 (1984).
[2] Ala. Code 1975, § 13A-3-23(a) sets out under the heading "Use of Force in Defense of a Person" the following:
 "(a) A person is justified in using physical force upon another person in order to defend himself, or a third person, from what he reasonably believes to be the use or imminent use of unlawful physical force by that other person, and he may use a degree of force which he reasonably believes to be necessary for the purpose. A person may use deadly physical force if the actor reasonably believes that such other person is:
 "(1) Using or about to use unlawful deadly physical force."
[3] The Court of Criminal Appeals affirmed because it found no basis in the evidence for the giving of the requested instruction.
[4] The State, on this point, does not argue that the instruction should not have been given, only that it was not requested in writing.
[5] Pettway was a police officer for the City of Prichard, but was off-duty on the night of the incident in this case, which took place in the City of Mobile. Mobile and Prichard are contiguous cities, both lying within Mobile County, Alabama.
It appears, therefore, that Pettway could have made an arrest without a warrant in his official capacity as a law officer, even though he was outside the city limits and police jurisdiction of Prichard, based on the provisions of Ala. Code 1975, § 15-10-1:
 "An arrest may be made, under a warrant or without a warrant, by any sheriff or other officer acting as sheriff or his deputy, or by any constable, acting within their respective counties, or by any marshal, or policeman of any incorporated city or town within the limits of the county."
See also Brooks v. State, 471 So.2d 511 (Ala.Cr.App. 1985). Furthermore, in Ringstaff v. State, 480 So.2d 50 (Ala.Cr.App. 1985), the Court of Criminal Appeals held that the fact that a police officer was "off-duty" did not affect the legality of the arrest, citing Hutto v. State, 53 Ala. App. 685, 689-90,304 So.2d 29, 32-33, cert. denied, 293 Ala. 758, 304 So.2d 33
(1974). *Page 1202