The appellant, Triona Ann Carter, was convicted of murder and manslaughter, violations of §§ 13A-6-2 and 13A-6-3, Ala. Code 1975, respectively. Carter was sentenced to life in prison on the murder conviction and to 20 years in prison on the manslaughter conviction.
This case involves convoluted facts and conflicting evidence. At trial, the appellant's entire theory of defense was self-defense and she requested a jury charge on self-defense. The trial court refused that jury charge. Consequently, the primary issue of this appeal is whether the trial court should have granted the appellant's request for instructions on self-defense.
On November 28, 1996, Tamiko Smith, Sheri Baker, Marcus Cephus, and Smith's infant daughter went to see a movie at a local theater in Birmingham. When the movie ended, Smith's group got into an altercation in the theater parking lot with Carter, her boyfriend Trevas Bell, and her friend Artimese Johnson.
As Smith approached the exit of the parking lot, she noticed that Bell was tailgating her car. Bell was so close to Smith's car that when she slowed at a speed bump in the lot, Bell's car hit the bumper of Smith's car. At that point, Smith and Cephus got out of Smith's car and asked if there was a problem. Bell and the passengers in his car, Triona Carter and Artimese Johnson, got out of Bell's car. Conflicting evidence was presented at trial with regard to what happened after the parties in the two vehicles got out of their cars.
However, it is uncontradicted that Carter and Baker exchanged words. Carter and Baker were involved in an altercation several months prior to this incident. On that occasion, Carter was attacked and beaten by unknown individuals carrying baseball bats; Baker had allegedly aided the attackers by letting one of them use her telephone to make a phone call. In the present case, when Carter confronted her, Baker denied being involved in the attack and Cephus intervened on Baker's behalf. The appellant's evidence showed that Cephus, who was 5'10" tall and weighed 232 pounds, attempted to push Carter, who was 5' tall, weighed 99 pounds, and was pregnant at the time of the incident. When Bell saw Cephus move toward Carter, he punched Cephus in the head. At that point, a fist fight began between Bell and Cephus.
After Bell punched him, Cephus tackled Bell to the ground and began throwing punches at Bell. While the two men were fighting on the ground, Carter walked up behind Cephus and punched him in the back in an attempt to get him off Bell. In response, Cephus got up and punched Carter in the face. The force of the blow knocked Carter to the ground and left her dazed. When she hit the ground, Carter noticed a 9mm pistol lying approximately one foot away from her.[1] Carter grabbed *Page 801 
the gun and began firing the gun rapidly. As a result, Carter shot and killed Cephus and her companion Artimese Johnson, and she shot and wounded her boyfriend Bell. Carter was subsequently arrested and charged with capital murder for killing two persons by one act or pursuant to one scheme or course of conduct. See § 13A-5-40(a)(10), Ala. Code 1975. After a two-day trial, Carter was convicted of manslaughter with respect to Cephus and murder with respect to Johnson.
On appeal, Carter contends that the trial court erred in denying her requested jury instructions on self-defense. Section 13A-3-23(a) states, in pertinent part:
 "(a) A person is justified in using physical force upon another person in order to defend himself or a third person from what he reasonably believes to be the use or imminent use of unlawful physical force by that other person, and he may use a degree of force which he reasonably believes to be necessary for the purpose. A person may use deadly physical force if the actor reasonably believes that such other person is:
 "(1) Using or about to use unlawful deadly physical force . . .
". . .
 "(b) Notwithstanding the provisions of subsection (a), a person is not justified in using deadly physical force upon another person if it reasonably appears or he knows that he can avoid the necessity of using such force with complete safety:
"(1) By retreating
". . . .
 "(c) Notwithstanding the provisions of subsection (a), a person is not justified in using deadly physical force if:
 "(1) With intent to cause physical injury or death to another person, he provoked the use of unlawful physical force by such other person; or
 "(2) He was the initial aggressor, except that his use of physical force upon another person under the circumstances is justifiable if he withdraws from the encounter and effectively communicates to the other person his intent to do so, but the latter nevertheless continues or threatens the use of unlawful physical force. . . ."
Like the case at hand, the appellant in King v. State, 478 So.2d 318
(Ala.Cr.App. 1985), killed an unarmed person but contended at trial that he acted in self-defense and that he was therefore entitled to a self-defense charge. In that case, King stabbed the victim (Williams) after having threatened to "get him." Evidence indicated that before the stabbing incident, Williams provoked a fight with King over King's fiancee.
A short time after this incident King went home, armed himself with a butcher knife, and returned to the same neighborhood where he had been confronted by Williams. King met Williams and his fiancee when he returned. When an argument arose between King and his fiancee, Williams intervened and pushed King. A shoving match ensued between King and Williams. Then, King pulled out the butcher knife and stabbed Williams who died as a result of the stabbing. King never saw Williams with any weapon and did not know if Williams had a weapon when he stabbed him.
In King, this court stated the general rule regarding a trial court's duty to instruct on the law of the case:
 "`[E]very accused is entitled to have charges given, which would not be *Page 802 
misleading, which correctly state the law of his case, and which are supported by any evidence, however weak, insufficient, or doubtful in credibility.' Chavers v. State, 361 So.2d 1106, 1107 (Ala. 1978). If there is `any evidence, however slight, tending to support' that the defendant acted in self-defense, the issue should be submitted to the jury. King v. State, 71 Ala. 1, 4 (1881). In most cases, the issue of self-defense is one of ultimate fact solely for determination by the jury, Domingus v. State, 94 Ala. 9, 11 So. 190 (1892), however `unsatisfactory and inconclusive to the judicial mind' the evidence of self-defense may appear. Burns v. State, 229 Ala. 68, 70, 155 So. 561, 562 (1934)."
478 So.2d at 319. See also Ex parte Pettway, 594 So.2d 1196, 1200 (Ala. 1991); and (Chavers v. State, 361 So.2d 1106, 1107 (Ala. 1978)).
In determining whether there is sufficient evidence to instruct a jury on self-defense, we must view the evidence in the light most favorable to the defendant. See Eubanks v. State, 611 So.2d 448, 449 (Ala.Crim.App. 1992); King v. State, 478 So.2d at 319; Chavers v. State,361 So.2d at 1106; Ex parte Pettway, 594 So.2d at 1200; Toler v. State, 623 So.2d 408,411 (Ala.Crim.App. 1993); and Coon v. State, 494 So.2d 184, 186
(Ala.Crim.App. 1986). If there is the slightest evidence tending to prove a hostile act that could reasonably be interpreted as placing Carter in apparent imminent danger to life or grievous bodily harm at the time of the shooting, the issue of self-defense becomes a question for the jury. See Ex parte Pettway, 594 So.2d at 1200.
The evidence favorable to Carter showed that Cephus and Smith were the first people to exit a vehicle before the shooting. Both Smith and Cephus were seen "fumbling" under the car seats as if they were looking for something. When Cephus and Smith got out of their car, they walked toward the front of Bell's car and at that point Bell, Carter, and Johnson got of their car. Cephus and Smith began yelling at Carter and her companions and an argument quickly ensued between Bell and Cephus. Cephus then attempted to assault Carter, and Bell intervened on her behalf and a fight ensued. Thus, according to the evidence presented by Carter, Cephus and Smith were the aggressors and the instigators of the fight.
While Bell was lying on the ground being punched by Cephus, Carter attempted to help him by hitting Cephus in the back. Cephus then punched Carter in the face and knocked her to the ground. Carter, who was pregnant at the time, testified that when Cephus hit her she was afraid for her own safety and for the safety of her unborn child. Like the appellant in King, Carter never saw Cephus with a weapon but she testified that because Cephus had been fumbling under the seat she did not know whether he had a weapon. Carter, like King, used deadly physical force to repel an assault by hand.
Generally, an assault with the hand or fist under ordinary circumstances will not justify the use of deadly force; however, there are exceptions to the general rule. King, 478 So.2d at 320-21. "There are times when exceptional and unusual circumstances may justify the use of a deadly weapon against an unarmed man, . . . `such as great disparity between the parties in the matter of physical power or other peculiar conditions.'" King, 478 So.2d at 321 (quoting Willingham v. State,262 Ala. 550, 80 So.2d 280 (1955)); George v. State, 145 Ala. 41,40 So.2d 961 (1906); Dilburn v. State, 16 Ala. App. 371, 77 So.2d 983
(1918). "When the assailant is a larger and more powerful man than the defendant and the latter is unable to resist his *Page 803 
attack, such inability to resist may give rise to an apprehension of danger which, if reasonably entertained, may justify killing the assailant even though he is unarmed." F. Wharton, Criminal Law § 127 (15th ed. 1994).
Cephus outweighed Carter by approximately 133 pounds and he was nearly a foot taller than she was. There was clearly a great disparity in size and physical power between Cephus and Carter at the time Carter was punched in the face. Also, because Carter was pregnant at the time she was punched, and given the fact that Carter was unsure whether Cephus had a weapon, we believe that a jury question was presented as to whether Carter believed that her life or the life of her unborn child was in imminent danger. "The law of self-defense makes use of (1) rules, and (2) the reasonable-person standard. The court determines what the rules are, but it is for the jury to determine whether the standard has been met in the particular case." King, 478 So.2d at 321 (quoting R. Perkins and R. Boyce, Criminal Law 1116 (3d ed. 1982).
With regard to the duty to retreat, Carter presented sufficient evidence to present a jury question as to whether it reasonably appeared, or whether Carter knew, that she could avoid using deadly physical force by retreating. Some circumstantial evidence was presented that suggested that the gun Carter used to shoot Cephus belonged to Cephus.
For example, Bell and Carter testified that the gun used to kill Cephus did not belong to either of them and that they did not have any weapons in their possession at the time of the altercation. In addition, they both testified that they saw Cephus fumbling under his seat as if he were looking for a weapon, and Carter testified that when Cephus knocked her down she saw the gun lying on the pavement next to her. Carter clearly raised a theory, through circumstantial evidence, that during Cephus's assault of her he dropped his gun and that she shot him before he could use the gun, assault her further by hand, or both. See e.g. Howard v.State, 420 So.2d 828 (Ala.Crim.App. 1982) (a jury question was presented as to whether it reasonably appeared that the defendant could avoid using deadly force by retreating, where the defendant attempted to shoot the victim at his place of business). We hold that, under the facts of this case, the issue of self-defense should have been presented to the jury.
The self-defense issue in the case involving Cephus, was also crucial in the case involving Johnson. The State applied the doctrine of transferred intent to Carter's killing of Johnson. Specifically, the State argues that Carter fired the pistol intending to kill Cephus and, in doing so, she killed Cephus and Johnson. See Appellee's brief p. 14; see also Mordica v. State, 618 So.2d 301 (Fla.Dist.Ct.App. 1993) (the doctrine of transferred intent applied when the defendant kicked the intended victim and inadvertently kicked an unintended victim); Harveyv. State, 111 Md. App. 401, 681 A.2d 628 (1996) (the doctrine of transferred intent is applicable whenever an unintended victim is shot and killed; it makes no difference whether the intended victim was also shot and killed).
When self-defense is a viable defense to a charge against a defendant, it also operates to excuse the injury or death of an unintended victim injured while the defendant was defending himself. See V.M. v. State, [Ms. 4D99-2311, February 16, 2000] 766 So.2d 280 (Fla.Dist.Ct.App. 2000); State v. Abeyta, 120 N.M. 233, 243, 901 P.2d 164, 174 (1995). Because the jury was not instructed on self-defense, the judgments of the circuit court are reversed and both causes are remanded for new trials. In light of our disposition of this *Page 804 
issue, there is no need to address Carter's other contention of error.
REVERSED AND REMANDED.
Long, P.J., and McMillan, Baschab, and Fry, JJ., concur.
[1] The evidence adduced at trial showed that the gun did not belong to Carter. Circumstantial evidence showed that the gun could have fallen from Cephus or Bell during the fight. However, Bell testified that the gun did not belong to him and that he did not know where the gun came from; this testimony was not rebutted by the State.