843 So.2d 804 (2001)
Ex parte State of Alabama.
(In re Triona Ann CARTER v. STATE).
1992225.
Supreme Court of Alabama.
May 25, 2001.
William H. Pryor, Jr., atty. gen., and Andy S. Poole, asst. atty. gen., for petitioner.
*805 J. William Cole of Luker, Cole & Associates, L.L.C., Birmingham, for respondent.
MOORE, Chief Justice.
On November 4, 1998, in the Jefferson County Circuit Court, a jury convicted Triona Ann Carter of intentional murder in the death of Artimese Johnson and of manslaughter in the death of Marcus Cephus. Carter was sentenced to life in prison for the intentional murder and to 20 years in prison for the manslaughter. The trial court had refused Ms. Carter's requested jury instruction on self-defense. The Court of Criminal Appeals reversed both convictions, holding that the trial court should have instructed the jury on the law of self-defense. Carter v. State, 843 So.2d 798 (Ala.Crim.App.2000). We granted the State's petition for certiorari review. We reverse the judgment of the Court of Criminal Appeals.
On November 28, 1996, Marcus Cephus, Tamiko Smith, Smith's infant daughter, and Sheri Baker went to a movie at a Birmingham theater. (R. 31.) As they were leaving the parking lot after the movie, the adults became involved in an altercation with Triona Carter, Trevas Bell, and Artimese Johnson. Bell's automobile bumped Smith's automobile; Smith then exited her car. Carter, Bell, and Johnson exited Bell's car. (R. 33-34.) According to Bell, Smith then returned to her car and "started fumbling under the seat and looking behind the seat." (R. 233.) At that point, Cephus exited Smith's car. Carter and Bakerwho was still in Smith's car began to argue about an altercation they had engaged in several months earlier.
The evidence indicated that Cephus, intervening on behalf of Ms. Baker, attempted to shove Carter (R. 35); that Bell then punched Cephus in the head, causing a fight between these two men; and that Cephus returned to his feet and tackled Bell. At trial, Bell described this fight as a "confrontation on the ground," and he stated: "We just primarily was rolling, he never did, I don't think he ever did hit me." (R. 234-35.) According to Smith, while Cephus and Bell were on the ground, Carter approached and punched Cephus in the back. Smith said that Cephus then stood up and punched Carter in the face, knocking her to the ground. (R. 35.)
Cephus was a 5'10", 232-pound male. Carter was a 5'0", 99-pound pregnant female. Carter testified that she noticed a 9mm pistol lying next to her on the ground. (R. 266.) She testified that she picked up this pistol and began firing it repeatedly. (R. 76.) As a result, Carter killed Marcus Cephus and her friend Artimese Johnson. She also wounded her boyfriend, Trevas Bell. The evidence at trial showed that this gun did not belong to Carter. Circumstantial evidence indicated that it could have fallen from Cephus or Bell during their fight. Bell testified that the gun was not his; the State did not rebut this assertion.
Carter asked the trial judge to charge the jury on self-defense. The State contested the self-defense charge proposed by Carter, arguing that the evidence presented did not support such an instruction. Section 13A-3-23, Ala.Code 1975, provides that one is justified in using deadly force if he or she is in actual or apparent peril of death or serious bodily harm; is not at fault in causing that peril; and is not able to retreat safely.
In King v. State, 478 So.2d 318, 319 (Ala.Crim.App.1985), the Court of Criminal Appeals stated:
"In determining whether to charge the jury on self-defense, `evidence most favorable to the defendant should be considered and if there is the slightest *806 evidence ... which can be reasonably interpreted as placing the accused, at the time of the killing, in apparent imminent danger to life or other grievous bodily harm then the matter of self-defense becomes a question for the jury."
See Byrd v. State, 257 Ala. 100, 104, 57 So.2d 388, 391 (1952). See also Chavers v. State, 361 So.2d 1106, 1107 (Ala.1978), and Toler v. State, 623 So.2d 408, 411 (Ala. Crim.App.1993).
Carter contends that she was entitled to have the trial court charge the jury on the affirmative defense of self-defense.
Professor Gamble has written:
"As a general rule, the accused is not entitled to have a claim of self-defense submitted to the jury if the undisputed evidence shows clearly any of the following: that the accused was not in actual or apparent imminent peril, that the accused was able to retreat, or that the accused was at fault."
"In the absence of evidence warranting a finding both that the accused was in actual or apparent imminent peril and was unable to retreat, it is assumed that the accused was not in such peril and was able to retreat. It necessarily follows that the accused has the burden of producing evidence warranting both of such findings and the discharge of that burden is one of the conditions precedent to being entitled to have the accused's claim of self-defense submitted to the jury."
Charles W. Gamble, McElroy's Alabama Evidence, § 457.02(5)(a) and (b) (5th ed.1996). (Emphasis added.) Based on the evidence appearing in the record, we must conclude that Carter was not at risk of death or serious bodily injury. We must conclude that Bell was not at risk of death or serious bodily injury. Even if we accepted Carter's argument that Cephus's actions caused her to have an honest and reasonable fear of substantial peril to her unborn child or to herself, and even if we accepted her argument that she was not at fault in causing the confrontation, nevertheless we must conclude that the evidence indicates she clearly had the ability to retreat and thus to escape any danger. In Crymes v. State, 630 So.2d 120, 125 (Ala. Crim.App.1993), the Court of Criminal Appeals held that "the [defendant's] failure to retreat [barred] him from claiming self-defense." See also Craig v. State, 719 So.2d 274 (Ala.Crim.App.1998). Bell, who was rolling on the ground with Cephus, was not in danger of death or serious bodily injury. Carter thus had no right under the provisions of § 13A-3-23(a) to use deadly force on his behalf.
The Court of Criminal Appeals analogized Carter's predicament to that of the defendant in King. The facts in King, however, were fundamentally different, because in that case King had been threatened by, and was engaged in a fight with, the victim. King was on the front porch of a residence when the victim began to charge toward him aggressively, precluding a retreat. In this case, Carter fired the pistol when she was no longer involved in the fight. Carter, who at that point was a safe distance behind Cephus and was not in any danger, then chose to shoot Cephus in the back. The evidence showed that Carter could have retreated from the scene, at any time and in any direction. The evidence further showed that Bell was not in mortal danger. Therefore, even if the trial court accepted Carter's version of the facts, it still would have concluded that she did not have the right to use deadly force against Cephus or Johnson.
The trial court properly denied the instruction on self-defense. Even construing *807 the evidence in the light most favorable to Carter, we find no evidence indicating that she was entitled to a charge on this affirmative defense under the provisions of § 13A-3-23. The trial court's ruling was consistent with § 13A-3-23 and with controlling precedent.
The judgment of the Court of Criminal Appeals is reversed, and the case is remanded for an order or proceedings consistent with this opinion.
REVERSED AND REMANDED.
HOUSTON, SEE, LYONS, BROWN, JOHNSTONE, HARWOOD, and STUART, JJ., concur.
WOODALL, J., dissents.
WOODALL, Justice (dissenting).
The Court of Criminal Appeals, in a unanimous decision, held that the trial court erred in failing to instruct the jury on self-defense. Carter v. State, 843 So.2d 798 (Ala.Crim.App.2000). Judge Cobb's opinion is well-reasoned, and its analysis is sound. Therefore, I adopt the opinion of the Court of Criminal Appeals as my dissent.