KELLUM, Judge.
The appellant, Eric Devon Johnson, appeals his conviction for murder, see § 13A-6-2, Ala.Code 1975. The circuit court sentenced Johnson to life imprisonment and ordered him to pay $50 to the crime victims compensation fund, $8,617.43 in restitution, and court costs.
Johnson and his brother, Ellis Andrei Diggs, were tried jointly for the murder of Garry Blackwell.[1] The record indicates the following pertinent facts. On February 4, 2012, Blackwell was operating an unlicensed club out of a house in Montgomery called “The Cave.” (R. 279.) At this club, women engaged in erotic dancing (i.e., “stripping”), and they also engaged in prostitution. Chasity Bowen, one of Blackwell’s dancers, had met Blackwell the previous year through a mutual friend and had grown close to Blackwell.
At approximately 4:00 a.m. on the morning of February 4, 2012, Bowen was preparing to leave after working at the club; however, her keys and other belongings were in the “VIP” room with one of the prostitutes and a customer. Blackwell refused to allow Bowen to enter the room to retrieve her belongings, and the two got into an altercation. Blackwell demanded that Bowen leave the club and picked her up and carried her outside after she refused to leave on her own. Once outside, Bowen told Blackwell that she had “a boyfriend that’s going to fuck [him] up.” (R. 285.) Bowen testified that Blackwell responded saying, “I don’t give a fuck who you call and what they bring, because when they made one gun, they made more.... [I]f they come up here and think they are going to control and do this and do that, [I] will bury them.” (R. 298.) Others who witnessed the incident took Bowen’s threat seriously; however, Blackwell laughed it off and said that “[i]f it was his time, it was his time to go.” (R. 205.)
Bowen arrived home very early in the morning while everyone in the house was still asleep. Bowen testified that she woke up Diggs and told him that Blackwell put his hands on her, hit her in the face, and threw her out of the club. Diggs responded that Blackwell had “fucked up,” got dressed, then woke up Johnson and a few other people who were sleeping in the house. (R. 288.) Diggs, Johnson, and another man left the house and went to The Cave to confront Blackwell.
Johnson and Diggs arrived at The Cave, and Diggs asked to see Blackwell. Sheena Bullock, a dancer at The Cave, was standing beside Blackwell when Johnson and Diggs arrived. According to Bullock, Blackwell and Diggs argued with each other. Bullock testified that Johnson stood back and said nothing. Bullock testified that she went inside to warn other people after she saw an impression of a pistol in the pouch of Johnson’s sweatshirt.
Diggs confronted Blackwell and asked what had happened between Blackwell and Bowen; Johnson continued to stand back and say nothing. As Blackwell tried to explain what had happened earlier, Diggs said “enough of this shit.” (R. 223.) Charles Lewis and Daryl Ball were at the club that evening and saw Diggs reach into the waistband of his pants and pull out a pistol. Lewis testified that Diggs fired several shots. From where Lewis was standing, he could see only Diggs. None of the witnesses at the club saw Blackwell *166 with a gun or saw him make any aggressive moves toward Diggs that night.
After the shooting, Diggs returned to the house he shared with Bowen and told Bowen that he had shot Blackwell. Bowen testified that “[Diggs] was like, he just pulled up the gun and [Blackwell] made the gesture like he turned toward the opposite direction like he was moving and [Diggs] said he didn’t know if [Blackwell] was pulling a gun, so he just — he shot. Diggs said he blacked out.” (R. 291.) Bowen testified that Diggs never said if Blackwell had a gun at the time of the incident.
Blackwell was found dead on the floor near the door of the club. Stephen Bou-dreaux, the director of the Montgomery Medical Examiners Facility, assisted with an autopsy of Blackwell. Boudreaux testified that Blackwell had been shot five times and that one of those gunshots was fatal. Boudreaux was unable to recover any projectiles from Blackwell’s body. Boudreaux testified that he was unsure how far away the shooter or shooters were from Blackwell.
No firearms were found in the club. Investigators discovered 16 shell casings in the area where the shooting took place. Stephanie Dees, a forensic scientist in firearms and toolmark identification, examined the casings and testified that six cartridges were 9-millimeter Makarov brand cartridge casings, nine cartridges were 9-millimeter Luger brand cartridge casings, and one casing was a .380 autocaliber cartridge casing. Dees testified that the Luger casings and Makarov casings had been fired from different guns. Dees indicated that the .380 casing was not fired from the same firearm as the Luger casings and that tests were inconclusive as whether it was fired from the same firearm as the Makarov casings. Dees determined that the casings were attributable to at least two and possibly three firearms.
Johnson elected not to testify at trial; however, Diggs testified in his own defense. Diggs stated that on the night of the incident, Bowen came home and told him that Blackwell had hit her. Diggs noticed some swelling on the side of Bowen’s face. Diggs indicated that Bowen told him that Blackwell had a .380 and that he said he would “bury” Diggs. (R. 392.) Diggs testified that he grabbed his 9-millimeter handgun for his protection and went to the club to ask Blackwell what he did to Bowen. Diggs asserted that he did not go to the club intending to shoot Blackwell.
Once at the club, Diggs and Johnson walked up to the front of the club where Diggs saw Blackwell and another man standing outside near the front door. Diggs said that he was looking for Blackwell. Blackwell stepped inside the club for about one minute and then came back outside where he stood a few steps outside the front door. Diggs testified that Blackwell never asked him to leave.
Diggs indicated that his conversation with Blackwell was initially calm; however, Diggs testified that Blackwell suddenly “flipped.” (R. 386.) Diggs stated that Blackwell admitted he put his hands on Bowen. Diggs testified that Blackwell said, “I ain’t got to explain it. I am sick of this shit,” then pulled out a gun and started shooting. (R. 386.) Diggs testified that he thought that Blackwell had shot him so he started running and “shooting rapid.” (R. 387.) Diggs testified that he and Johnson ran home after the shooting.
After both sides had rested and the court had instructed the jury on the applicable principles of law, the jury found Johnson guilty of murder. This appeal followed.
*167 Johnson contends that the circuit court erred when it refused to properly instruct the jury on self-defense because he and Diggs were lawfully on the premises of the club, they did not have a duty to Retreat, and Diggs shot at Blackwell after Blackwell drew a pistol and shot at them. Diggs testified that he did not know whether Johnson was shooting a gun during the incident.
At the outset, we address the State’s contention that Johnson failed to preserve this issue for appellate review on appeal. In order to preserve a jury-instruction issue for appellate review, the defendant must object before the jury retires to deliberate. See Davis v. State, 747 So.2d 921, 924 (Ala.Crim.App.1999); Hinton v. State, 632 So.2d 1345, 1350 (Ala.Crim.App.1993). Despite the State’s arguments to the contrary, Johnson specifically requested that the jury be instructed on self-defense, objected to the circuit court’s failure to do so, then objected, before the jury retired to deliberate, to the circuit court’s jury instructions on the basis that the instructions were inadequate; therefore, this issue is properly preserved for our review.
“ ‘A trial court has broad discretion in formulating its jury instructions, provided they are an accurate reflection of the law and facts of the case.’ ” Toles v. State, 854 So.2d 1171, 1175 (Ala.Crim.App.2002), quoting Coon v. State, 494 So.2d 184, 186 (Ala.Crim.App.1986).
“A trial court’s refusal to give a defendant’s requested jury instruction ‘constitutes reversible error only if such instruction (1) was correct, (2) was not substantially covered by the [trial] court’s charge, and (3) concerned a point in the trial which was so important that the failure to give the instruction seriously impaired the defendant’s ability to defend himself.’ Dill v. State, 600 So.2d 343, 353-54 (Ala.Crim.App.1991), aff'd, 600 So.2d 372 (Ala.1992), cert. denied, 507 U.S. 924, 113 S.Ct. 1293, 122 L.Ed.2d 684 (1993).”
Ex parte R.D.W., 773 So.2d 426, 429 (Ala.2000).
An accused has the right to have the jury charged on “ ‘any material hypothesis which the eviclence in his favor tends to establish.’ ” Harbin v. State, 14 So.3d 898, 909 (Ala.Crim.App.2008), quoting Ex parte Stork, 475 So.2d 623, 624 (Ala.1985). “[E]very accused is entitled to have charges given, which would not be misleading, which correctly state the law of his case, and which are supported by any evidence, however weak, insufficient, or doubtful in credibility.” Harbin, 14 So.3d at 909, quoting Ex parte Chavers, 361 So.2d 1106, 1107 (Ala.1978). “In order to determine whether the evidence is sufficient to necessitate an instruction and to allow the jury to consider the defense, we must view the testimony most favorably to the defendant.” Ex parte Pettway, 594 So.2d 1196, 1200 (Ala.1991).
•Johnson requested jury instructions on self-defense. Section 13A-3-23, Ala.Code 1975, provides:
“(a) A person is justified in using physical force upon another person in order to defend himself or herself or a third person from what he or she reasonably believes to be the use or imminent use of unlawful physical force by that other person, and he or she may use a degree of force which he or she reasonably believes to be necessary for the purpose. A person may use deadly physical force, and is legally presumed to be justified in using deadly physical force in self-defense ... if the person reasonable believes that another person is:
*168 “(1) Using or about to use unlawful deadly physical force ....
[[Image here]]
“(b) A person who is justified under subsection (a) in using physical force, including deadly physical force, and who is not engaged in an unlawful activity and is in any place where he or she has the right to be has no duty to retreat and has the right to stand his or her ground.
“(c) Notwithstanding the provisions of subsection (a), a person is not-justified in using physical force if:
“(1) With intent to cause physical injury or death to another person, he or she provoked the use of unlawful physical force by such other person.
“(2) He or she was the initial aggressor. ...”
The State argues in its brief on appeal that Diggs was the initial aggressor and, therefore, could not claim that he acted in self-defense. Diggs, however, presented evidence indicating that Blackwell was the initial aggressor. Diggs testified that he went with Johnson to the club to ask Blackwell what he had done to Bowen. According to Diggs, Blackwell became agitated during their conversation regarding Blackwell’s treatment of Bowen, and Blackwell pulled out his pistol and shot at Diggs. Therefore, based on Diggs’s testimony, Blackwell was the aggressor whose actions resulted in an altercation involving deadly physical force.
The State further argues that Diggs was engaged in an unlawful activity because he is a convicted felon who armed himself with a deadly weapon. The State contends that, based on this unlawful activity,’ Diggs’s presence at the club was unlawful and, therefore, negated Diggs’s claim of self-defense. In Ex parte Taylor, 636 So.2d 1246 (Ala.1993), our Supreme Court recognized that a felon is not' completely deprived of his right to possess a firearm when in immediate need to defend his life. Specifically, the Court in Taylor held that, “when a felon is in imminent peril of great bodily harm, or reasonably believes himself or others to be in such danger, he may take possession of a weapon for a period no longer than is necessary ... to use it in self-defense.” 636 So.2d at 1247. In the instant case, evidence presented at trial established that Bowen told Diggs that Blackwell had a gun and that Blackwell had said that he was going to “bury” him. Diggs’s.testimony, if believed by the jury, indicated that Diggs used the firearm in defense of his life.
We have carefully reviewed the record before us. Because Diggs presented evidence, albeit weak and doubtful in credibility, that indicated that Blackwell drew his gun first and was therefore the initial aggressor, the circuit court erred when it refused to charge the jury on self-defense. See Harbin, supra. Because Johnson was Diggs’s codefendant and was found guilty of murder based on his codefendant’s conduct, he is entitled to a new trial.
For the foregoing reasons, the judgment of the circuit court is reversed and the cause is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
WINDOM, P.J., and WELCH, J., concur.
BURKE, J., concurs in the result.
JOINER, J., concurs in part; dissents in part, with opinion.

. Johnson was jointly tried with his codefen-dant, Diggs. Diggs was convicted of murder and appealed his conviction. This Court today reverses Diggs's conviction. See Diggs v. State, 168 So.3d 156 (Ala.Crim.App.2014).