RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 16a0088p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

                *Plaintiff-Appellee,*

    *v.*

                                No. 14-6490

JEFFERY T. WALKER,

                *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Tennessee of Chattanooga.
No. 1:94-cr-00098—Curtis L. Collier, District Judge.

Decided and Filed: April 11, 2016

Before: SILER, SUTTON, and STRANCH, Circuit Judges.

_____

## COUNSEL

**ON BRIEF:** Laura E. Davis, FEDERAL DEFENDER SERVICES OF EASTERN TENNESSEE, INC., Knoxville, Tennessee, for Appellant. Michael D. Porter, UNITED STATES ATTORNEY'S OFFICE, Chattanooga, Tennessee, for Appellee.

_____

## OPINION

_____

SUTTON, Circuit Judge. "[T]here is nothing new under the sun." *Ecclesiastes* 1:9. Maybe so. But this is a first for us—a dispute between next-door neighbors about uncollected dog deposits that degenerated into a near-fatal assault with a machete. Jeffery Walker admits that his assault violated the terms of his supervised release (now the least of his problems in view of a state law indictment in Alabama for attempted murder). But he takes issue with the five-year sentence that the district court judge imposed for the violation. We affirm the sentence.

1

Walker served nineteen years in federal prison after he distributed cocaine and pointed a gun at the police when they came to arrest him. *United States v. Walker*, 119 F.3d 403, 404–05 (6th Cir. 1997). Upon his release in 2013, he moved to Alabama and began a five-year term of supervised release, the first requirement of which was to follow that State's laws. *See* 18 U.S.C. § 3583(d).

This he could not do. Walker was not happy that his neighbor's dog repeatedly defecated (and urinated) in his yard. He let his neighbor know, to no avail. He let the police know, again to no avail. One day, after he discovered new deposits in his yard, he asked his neighbor to clean up the mess and placed a bucket over the offending excretion to show him where it was. When the neighbor came over with a stick in his hand (perhaps to clean things up), an argument ensued. The parties give vastly different accounts of that argument, but one thing is for sure: it ended with Walker attacking his neighbor with a machete. Walker severely cut his neighbor's arm (requiring it to be amputated), shattered the neighbor's other elbow, slashed the neighbor's head, and severed a nerve in the neighbor's leg. Another neighbor called 911, and emergency responders took the neighbor to a nearby hospital where he survived.

Walker claimed that he attacked his neighbor in self-defense. But an investigation revealed that Walker "had no cuts, scratches or bruises on him," R. 210 at 2–3, and there is no evidence that the neighbor had ever threatened him, swung the stick at him, or even raised the stick. An Alabama grand jury indicted Walker for attempted murder, a charge that, so far as the record shows, remains pending.

The attempted-murder charge got the federal government's attention. It alleged that Walker's conduct violated the terms of his supervised release. *See* 18 U.S.C. § 3583(d). Walker admitted to the violation, agreeing he had committed "an assault, whether . . . attempted murder or some other variety." R. 222 at 3. After accepting this admission, the district court heard from each side's lawyers before sentencing Walker to the statutory maximum of five years in prison. *See* 18 U.S.C. § 3583(e)(3).

On appeal, Walker protests his five-year sentence, claiming that the district court should have given him the benefit of Alabama's self-defense law. The first problem with this argument

is that Walker admitted that he violated the terms of his supervised release by "committ[ing] a state law violation," whether attempted murder or run-of-the-mill assault. R. 222 at 3. Once he acknowledged a state law violation of some sort, he necessarily acknowledged a violation of the terms of supervised release. At that point, the key issue was one of federal law—namely, what kind of renewed incarceration (if any) was reasonable under the circumstances. The district court properly considered Walker's actions under the federal sentencing rubric. *See* 18 U.S.C. §§ 3553(a), 3583(e). And it determined that "using a machete in a confrontation like this [was not] a reasonable response" and that "the need to protect the public" counseled in favor of a statutory maximum sentence. R. 222 at 27–28. In reaching this conclusion, the court accepted Walker's version of events, at least the version put forward by his lawyer, as Walker opted not to testify given the pending attempted-murder charge. The court considered the § 3553(a) factors and thought that a five-year sentence was appropriate. It is hard to quarrel with that conclusion, particularly in view of the abuse-of-discretion standard that governs it. *See Gall v. United States*, 552 U.S. 38, 51 (2007).

Walker persists that, if the district court had consulted Alabama's self-defense law, it would have seen his attack as justified and imposed a lower sentence. That is wishful thinking. To justify using force in self-defense, Alabama law requires a "reasonabl[e]" belief that imminent force is about to be used, Ala. Code § 13A-3-23(a); an "honest" but unreasonable belief does not do the trick. *Holley v. State*, 75 Ala. 14, 19 (1883); *see Ex parte Pettway*, 594 So. 2d 1196, 1200–01 (Ala. 1991). On this record, Walker's belief, however honest, was emphatically unreasonable. He had no objective indications that his neighbor was about to attack him with the stick. And even if he did, Walker brought a machete to a stick fight and nearly killed his neighbor in the process—all in a dispute over a canine trespass that, however often it may have occurred and however maddening it may have become, ought to have led to an alternative form of dispute resolution. *See* Ala. Code § 13A-3-23(a).

Walker's lawyer attempts to downplay her client's use of a machete, claiming that it is merely a "garden implement." Reply Br. 2. That is easy for her to say. The neighbor, Chris Gaylor, presumably sees it differently, for the same reason that the victim of a near-fatal knifing would not characterize the weapon as a "kitchen utensil." Nor does Alabama's self-defense law,

as Walker's lawyer puts it, resemble "war," where "when you put someone down, you need to make sure they stay down." *Id.* at 3.   In Alabama, you may use only the "degree of force" "reasonably . . . necessary" to defend yourself.   Ala. Code § 13A-3-23(a).   Walker exceeded that level of force by continuing to assault—nearly kill—his neighbor even after he had "put [him] down." Reply Br. 3.   The district court did not misapply either sovereign's laws.

It is tempting to leave it at that.   Everything we have said so far is accurate and justifies the district court's sentence.   But this account is misleading because it omits an unusual feature of the case.   Mr. Walker, it turns out, has several redeeming qualities.   During his nineteen-year stint in prison, he was a model prisoner.   He was never disciplined, did everything that was asked of him, and at one point protected a prison guard from an assault.   During his one year out of prison before this assault, he also was a model citizen.   He got a job.   He paid off some old fines that allowed him to obtain a driver's license again.   He moved to Alabama in order to be near his mother.   He saved enough money to buy a house, which he improved in many ways.   He took great pride in keeping the house clean—both inside and out.   And he even turned himself in after a warrant was issued for his arrest.   That he responded as he did to the itinerant habits of his neighbor's dog is thus something of a riddle.   To his credit, Judge Collier quite fairly acknowledged all the good that Mr. Walker has done in rehabilitating himself:   "[H]e went out of his way to be a good citizen," attempted "to protect other people who found themselves in danger," and tried "to do what most citizens do, get a job, be a constructive and productive member of society" in pursuit of "the American dream."   R. 222 at 22, 27.   But just as fairly, Judge Collier acknowledged that a free and safe society cannot accept the kind of behavior Mr. Walker exhibited.   Being a model citizen for 364 days of the year is not of much use if this is what happens on the 365th day.   Perhaps, as Judge Collier hoped and as we hope as well, further mental health counseling will make Mr. Walker's next adjustment to freedom after his next stay(s) in prison more successful.

For these reasons, we affirm.