# CASES

IN THE

# SUPREME COURT OF ALABAMA.

## DECEMBER TERM, 1881.

## King *v.* The State.

### *Indictment for Murder.*

1. *Charge of the court; when not erroneous.*—Where counsel, in the argument of the cause, urged upon the jury, that there was a conflict between the evidence of a named witness and that of the other witnesses in the cause,—*held*, that the court committed no error in referring to the argument in its charge to the jury, and in submitting for their consideration and determination, whether there was such conflict, and in referring to them the credibility of the witnesses, if such conflict did exist.

2. *When charge does not invade province of the jury.*—Upon exception to a sentence in the general charge of the court, wholly disconnected from the body of the charge, which is in these words: "Do you thus believe then that in this county and before the finding of the indictment in this case, the defendant killed John T. Franklin [the deceased]? If so, then inquire, as I have stated, from the evidence, what the circumstances of the killing were, what was the situation of the parties to each other,"—*held*, that there was no invasion of the province of the jury—no assumption that any fact was proved, nor the withdrawal from the consideration of the jury of evidence tending to establish any fact.

3. *When charge is abstract.*—On the trial of a defendant indicted for murder, if there is no evidence tending to show that the killing was unintentional, though unlawful, a charge requested by the defendant instructing the jury, that the defendant might be found guilty of manslaughter in the second degree, although guiltless of a higher offense, is abstract and should be refused.

4. *Same.*—In the absence of all evidence in such case having a tendency to show that at the time of the killing the defendant was in imminent peril of life or grievous bodily harm, or of the existence of circumstances creating.in his mind a reasonable belief of such peril, a charge requested by the defendant embodying instructions on the law of self-defense, is abstract, and should be refused.

APPEAL from Coosa Circuit Court.

Tried before Hon. JAMES E. COBB.

1

[King v. The State.]

The indictment in this cause charged the defendant with the murder of John T. Franklin; and he was convicted of manslaughter in the first degree. The evidence for the State tended to show, that in November, 1879, the defendant and the deceased went into a certain store in Rockford, in Coosa county, about the same time, and there had a conversation, in which the defendant said that the deceased had been saying something about him; that after talking for a minute or so, they left the store together, but in about half an hour they returned together, when the defendant asked the proprietor of the store, whether the deceased had said "a certain thing about him," to which the proprietor replied in the affirmative; that King then turned to the deceased and demanded a retraction; that after this the State's witnesses did not see what was done by either of the parties, until their attention was attracted by a noise, when they saw the defendant strike the deceased several blows with an ordinary walking stick; that the deceased was doing nothing to, nor was he making any demonstrations towards the defendant; that two men then caught hold of the defendant and pulled him towards and near to the front door; that "King struggled to get away, saying 'let me go,' and in a moment or two he did get away, having drawn and opened a common pocket-knife during his struggles, and as soon as he got loose he went to Franklin, who, staggering, had advanced" towards a door on the side of the store leading into a bar-room, from the rear end of the room where the blows with the stick were stricken, "and there King cut him twice with the knife, one cut in the side, and the other in the shoulder, Franklin not resisting, and he fell and in a few minutes died;" and that the death of the deceased was caused by the cut in the side. The evidence for the State also proved that within a short time before the killing the defendant had threatened to kill the deceased; but that afterwards and about five minutes before the killing, "they made friends," took a drink together in a bar-room, and left the bar-room together "perfectly friendly." The testimony for the defendant tended to show that just before he struck the deceased, the latter said "in response to several demands from" King, the defendant, "I am the man that said it, and I will say it again," and that he repeated this, and, as he did so, he put his right hand in his pants' pocket and stepped back with his right foot, and then the defendant struck him; that the deceased came to the side-door leading into the bar-room, and asked a man who was standing in the door, for a pistol twice; that defendant was then near the front-door, not more than ten feet from the deceased, and he "at that moment" got loose and advanced to the deceased and "did the cutting;" that the defendant had twice that day asked the de-

ceased to go away and let him alone; and that the deceased, within three months preceding the killing, made frequent threats to kill the defendant, some of which had been communicated to him. "King and Franklin were both drinking—Franklin being more intoxicated than King."

The bill of exceptions does not purport to set out all the evidence, but after a statement of what the evidence tended to prove, the substance of which is given above, the bill of exceptions proceeds: "And thereupon the court, being requested by the defendant to charge the jury in writing before the argument of counsel began, charged as follows: 'But is there any material conflict in the statements of the several witnesses? It is said that the witness Sims [who seems to have been examined as a witness for the defendant] stated facts not testified to by other witnesses, and that the facts so stated by Sims makes a different situation than is made by the testimony of the other witnesses. Is this true? Is there or not anything in the statements of Sims which is in material conflict with other witnesses? If there is, and if you are led to believe his statements rather than those of the other witnesses, you will inquire whether or not his evidence is sufficient to so place the defendant and the deceased, that the defendant, as a reasonable and prudent man, had any cause to apprehend danger.' To which the defendant duly excepted. 'Do you thus believe then, that in this county, and before the finding of the indictment in this case, the defendant killed John T. Franklin? If so, then inquire, as I have stated, from the evidence, what the circumstances of the killing were, what was the situation of the parties to each other.' To which the defendant duly excepted." The defendant then asked the court in writing to give six charges to the jury, but the court refused each of these charges, and the defendant separately excepted. The first charge so requested is in these words: "Under this indictment the defendant may be found guilty of manslaughter in the second degree, even though he may be guiltless of a higher offense; and if you should find him guilty thereof, you will so say by your verdict, and punish him by confinement in jail or hard labor for the county not more than one year, and by a fine not exceeding five hundred dollars." The other charges so requested relate to the law of self-defense.

The rulings of the Circuit Court above noted are here assigned as error.

Parsons & Parsons, for appellant.

H. C. Tompkins, Attorney-General, for the State.

[King v. The State.]

BRICKELL, C. J.—The general charge of the court, on the request of the defendant, was given in writing. An exception to two sentences of the charge was taken. These, wholly disconnected from the body of the charge, are now presented for review, without a statement of all, or the substance of all the evidence which was before the jury. The objection urged in support of the first exception is, that the court assumed the only conflict in the evidence was between Sims' testimony and that of the other witnesses. This is not the proper construction of the charge, or sentence of it, recited in the bill of exceptions. The court referred to the argument of counsel, manifestly, in which it had been urged there was a conflict between the evidence of Sims and the other witnesses, and submitted for the consideration and determination of the jury, whether there was such conflict, and, if it existed, refers to them the credibility of the witnesses. This was within the line of the duty of the court.

The second sentence of the charge is not offensive to the objection taken to it. There is no invasion of the province of the jury—no assumption that any fact was proved, nor the withdrawal from the consideration of the jury of evidence tending to establish any fact.

If there had been any evidence tending to show that the killing was unintentional, though unlawful, the first instruction requested could have been given properly. The evidence showing that the killing was voluntary and intentional, the instruction was abstract, and properly refused. So, if there was any evidence, however slight, tending to support the hypothesis on which the other instructions requested are founded, it may be they should have been given. But in the absence of all evidence having a tendency to show that at the time of the killing the accused was in imminent peril of life, or grievous bodily harm, or of the existence of circumstances creating in his mind a reasonable belief of such peril, leaving out of view that he appears to have provoked the difficulty, these instructions were abstract. The court never errs in refusing instructions which are abstract. If given, the only effect following them would be to mislead the jury, unless additional and explanatory instructions were given.

Affirmed.