[Tarver v. The State.]

# Tarver *v.* The State.

137   29
142   399

*Indictment for Murder.*

1. *Bill of exceptions; when sufficiently shown to have been signed within the time allowed by order of the court.*—Where there is an order of the court allowing the defendant thirty days from the date of the order for the preparation and signing of a bill of exceptions, and the bill of exceptions contained in the record bears no date as to the time of the signing, but it recites at the conclusion and just before the signature of the judge that it "is signed by the presiding judge within the time fixed by the order of the court," such recital is a *prima facie* showing that the bill of exceptions was signed on a day within the thirty days from the date of the order, and in the absence of evidence contradicting such recital, the bill of exceptions will not be stricken on motion, but must be considered on appeal.

2. *Organization of jury in capital case; when not error for the court to refuse an examination voir dire.*—When in the organization of a jury for the trial of a capital case, the name of one of the special jurors was called and such juror was not present and failed to answer, it is not error for the court to refuse to grant the insistence of the defendant that said juror should be examined on his *voir dire;* such examination being impossible, and the court not being required to delay the trial until the juror could be found and brought into court for the purpose of such examination.

3. *Indictment for murder; charge as to competency of evidence.* On a trial under an indictment for murder, where there was introduced in evidence the dying declarations of the deceased, which tended to show that the defendant killed her in a quarrel, a charge is erroneous and properly refused, which instructs the jury that "unless they believe from the evidence beyond a reasonable doubt that the person alleged to have been killed in the indictment made the declaration in evidence under a clear conviction of impending death, they can not consider such declarations as evidence;" it being the province of the court to pass upon the competency of such evidence.

4. *Indictment for murder; charge as to reasonable doubt and self defense.*—On a trial under an indictment for murder, where

[Tarver v. The State.]

there was no evidence introduced that the defendant shot the deceased in self defense, a charge is erroneous and properly refused which seeks to instruct the jury that "Whether the defendant sets up self defense or not, yet if the jury have a reasonable doubt, growing out of the evidence as to whether or not the defendant fired the fatal shot in self defense, then they cannot convict the defendant."

5. *Argumentative charges and charges which are obscure and confused* are properly refused.

Appeal from the City Court of Montgomery.

Tried before the Hon. WILLIAM H. THOMAS.

The appellant in this case, Jordan Tarver, was indicted and tried for the murder of Ann Tarver, was convicted of murder in the second degree and sentenced to the penitentiary for forty years.

The bill of exceptions contains the following recital as to the rulings of the court in the organization of the jury: "The name of S. S. Higgins a special juror summoned to try this cause was called and he failed to answer. The court stated that said Higgins had informed the court that he was a deputy U. S. Marshall and had asked to be excused. The defendant insisted that said Higgins should be put on his *voir dire* and excepted to the action of the court in declining to put said Higgins on his *voir dire.* Thereupon defendant excepted to this action of the court. The court then oredered that a forfeiture be entered against said Higgins."

On the trial there was evidence tending to show that before the finding of this indictment, the defendant, in Montgomery county, shot and killed Ann Tarver with a pistol, and that the deceased was the wife of the defendant.

Two witnesses introduced on behalf of the State testified that a short time after the deceased received the wound which resulted in her death, they went in the room where deceased was lying on a bed; that in the presence and hearing of said witnesses, she stated that she knew she was dying and that she had been shot by her husband, the defendant, in a quarrel they were engaged in about another man, and that a short time after making

this statement, the deceased died from the effects of the pistol wound which she received. The evidence for the State further tended to show that the deceased and the defendant quarrelled about another man, and the defendant became very angry and struck the deceased, and thereupon the deceased grabbed a table fork and stuck him in the arm or shoulder with the fork and the defendant then shot her.

The father and mother of the defendant and another witness testified on the part of the defendant, that they were with the deceased at all times after the shooting, when the two State witnesses were in the room; that the deceased did not state she was dying, but stated that the shooting was accidental and happened while she and the defendant were playing with the pistol. There was further testimony tending to show that immediately before and at the time of the shooting the deceased had stabbed the defendant with a fork, and that marks had been found on the defendant's arm and shoulder which appeared to be wounds from a fork.

There was evidence introduced on the part of the defendant tending to show that he had borne a good character as a peaceable man in the neighborhood in which he lived, and that the deceased and he had been married only about a year before the shooting, and their relations had been of a pleasant and loving character.

The defendant requested the court to give to the jury the following writen charges, and separately excepted to the court's refusal to give each of them as asked: (1.) "The court charges the jury that unless they believe from the evidence beyond a reasonable doubt that the person alleged to have been killed in the indictment made the declaration in evidence under a clear conviction of impending death, they cannot consider such declarations as evidence in this cause." (11.) "Whether the defendant sets up self defense or not, yet if the jury have a reasonable doubt, growing out of the evidence as to whether or not the defendant fired the fatal shot in self defense, then they can not convict the defendant." (13.) "Dying declarations are not the highest and best evidence known to the law, but such declarations must be received with great caution." (14.) "It is not the law that dying dec-

larations are the highest and best evidence known to the law." (15.) "If there can be any reasonable hypothesis from the evidence in this case which is consistent with the innocence of the defendant, then it is the duty of the jury to acquit him."

In this court there was a motion made to strike the bill of exceptions upon the ground that it was not shown to have been signed within the time prescribed by the order of the court.

No counsel was marked as appearing for appellant.

MASSEY WILSON, Attorney- General, for the State.

DOWDELL, J.—An order of the court made on the 6th day of January, 1903, allowed to the defendant thirty days from that date for a bill of exceptions. The bill of exceptions bears no date as to the time of the signing by the presiding judge, but it recites at the conclusion and just before the signature of the judge, that "the defendant now tenders this his bill of exceptions, which is signed by the presiding judge within the time fixed by the order of the court." This is a *prima facie* showing that the bill was signed on a day within the thirty days from the date of the order, as much so as if it had borne date of a particular day within the prescribed time. The motion, therefore, to strike the bill, in the absence of evidence contradicting the recital that it was signed within the time prescribed by the order of the court, must be denied.

There is no merit in the exception reserved to the action of the court in reference to the special juror Higgins. The juror was not peresent, but failed to answer when called and a forfeiture was entered against him. It was impossible to examine the juror on his *voir dire* when he was not present, and the court was not required to delay in proceeding with the trial until the juror could be found and brought into court for the purpose of such examination, and this was in effect the insistence of the defendant.

[Stewart v. The State.]

It is the province and duty of the court to pass upon the comptency in evidence. Charge 1 requested by the defendant violated this rule of law in referring the question of the competency of the evidence to the jury, and was for that reason, if no other, properly refused. Charge No. 11 was palpably bad. In the first place there was no evidence that the defendant shot the deceased in self-defense, and in the next place, if there had been, the charge was bad in the omission to hypothesize the constituent elements of self-defense, and in leaving it to the jury to say what would constitute self-defense. Charges 13 and 14 were argumentative, and there was no error in their refusal. Charge 15 is obscure and confused, and was calculated to mislead the jury.

We find no error in the record, and the judgment will be affirmed.