27 So.2d 46

## FINNEY v. STATE.

### 7 Div. 803.

Court of Appeals of Alabama.

March 5, 1946.

Rehearing Denied April 2, 1946.

Merrill, Merrill & Vardaman, of Anniston, for appellant.

Wm. N. McQueen, Atty. Gen., and John O. Harris, Asst. Atty. Gen., for the State.

## HARWOOD, Judge.

Appellant was indicted for murder in the first degree, found guilty of murder in the second degree, sentenced to imprisonment in the penitentiary for a term of ten years. Hence this appeal.

On the night of 9 December 1944 a card game was in progress in the home of Nellie Mae Murphree. Present were Nellie Mae, an unidentified soldier, a man identified only as Arthur, Fredonia Robinson, and appellant, Henry Finney. Fredonia and appellant at the time were living together as husband and wife, though not married.

During the progress of the festivities the deceased, who was a brother of Nellie Mae, came in. He and Nellie Mae began "just arguing a little bit." From this point on the testimony of witnesses for the State differs entirely from that of the defense witnesses. According to witnesses for the State Nellie Mae requested Fredonia to go next door and have Irelia Simpson, another sister of deceased, prevail upon deceased to leave Nellie Mae's house. Irelia lived in the house next door, only ten steps separating the two houses. Fredonia left on the errand, and was followed by deceased. Immediately appellant left the game and followed with an open knife. Nellie Mae tried to stop him but was unsuccessful, and she too went on out of the house. According to her version, Isaac, the deceased, and appellant were on the back porch of Irelia's home when she reached the yard. Appellant then struck Isaac with his knife, turned and fled between the two houses. Isaac followed the same route, but upon reaching the street in front of the houses turned and entered his sister Irelia's home, where he lived. He collapsed immediately on gaining the inside of the house and died in a few minutes.

According to evidence for appellant after Isaac and Fredonia had left the game he followed them a few minutes later. As he reached the backyard deceased had knocked Fredonia down and then advanced on appellant, cursing as he advanced, and knocked him down. As appellant arose he saw that deceased had an open knife, and appellant being hemmed in by fences, got out his knife. As deceased closed in appellant pushed him back, and then fled, striking back towards deceased as he pursued. Whether he cut deceased or not he claims not to know.

A trail of blood, significantly beginning on the back porch of Irelia's house and following the route taken by deceased, was seen and described by numerous witnesses. Also significantly, appellant bore no physical scars of any sort as a result of his encounter with deceased.

There was testimony tending to prove the good character of appellant, and deceased's bad reputation for peace and quietude.

No exceptions were reserved to any of the testimony of the witnesses, and counsel for appellant frankly admits that the only error in the trial of this case arose out of the court's refusal to orally charge that the indictment for murder in the first degree included manslaughter in the second degree, an exception having been duly reserved on this point, and also the court's refusal to give a written charge requested by appellant to the same effect.

Appellant's counsel in his brief insists that the recent case of Davis v. State, 31 Ala.App. 508, 19 So.2d 356, is decisive on this proposition. With this contention we do not agree. In the Davis case, supra, the appellant had killed his wife by the discharge of a shotgun as she was enter-

326

ing an automobile driven by appellant. Appellant's defense was that the firing of the gun was accidental. Had the jury accepted this version the unfortunate killing would have been manslaughter in the second degree assuming it resulted from carelessness, or an unlawful act, i. e. presenting a shotgun, loaded or unloaded, at another. Medley v. State, 156 Ala. 78, 47 So. 218; Section 167, Title 14, Code of Alabama 1940.

The facts of the instant case are entirely different from those of the Davis case relied on by appellant. The involuntariness of the killing is the essential element in manslaughter in the second degree. In this case, even under appellant's version there can be no question but that the killing resulted from an intentional act. Accident or negligence being ruled out by appellant's intentional use of a knife, the requested charge as to manslaughter in the second degree was properly refused. King v. State, 71 Ala. 1.

True, appellant attempted to justify his acts on the theory of self defense. The jury apparently regarded his testimony along this line as the wandering of untamed fancy. Regardless, self defense would, if sustained, be a justification to any degree of homicide, and could not affect the degree. The trial court was therefore correct, under the facts of this case, in not charging as to manslaughter in the second degree, and refusing the written charge pertaining thereto.

Affirmed.

CARR, J., not sitting.