[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 442 
Marcus Antwine Williams was indicted for murder, a violation of §§ 13A-6-2, Ala. Code 1975, for the shooting death of Victor Martin on October 5, 2002. A jury convicted him of the lesser-included offense of manslaughter. He was sentenced to 20 years' imprisonment; the sentence was split, and he was ordered to serve 5 years in prison.
The sole issue raised on appeal is whether the trial court erred when it refused to instruct the jury on self-defense as Williams had requested. Williams maintains that he was entitled to have the jury charged on self-defense because, he says, evidence of self-defense was presented at his trial; his requested charges on self-defense correctly stated the law and were not misleading; and the trial court's refusal to charge the jury on self-defense denied him a fair trial.
The evidence adduced at trial indicated the following. On Saturday, October 5, 2002, Williams shot and killed Martin in the parking lot of McNeal's Carwash on East Broad Street in Gadsden. Dr. Joseph Embry, the medical examiner who performed the autopsy on Martin, testified that Martin died from two gunshot wounds, one in the chest and one in the back. Dr. Embry testified that there was no gunpowder stippling around either of the wounds, which indicated that the shots were probably fired from at least three and one-half feet away. Jason and Patricia Becker, who lived across the street from the carwash, were having a yard sale the day of the shooting and witnessed the incident. Both testified that they saw Williams pull his car into the parking lot of the carwash and that two to five minutes later a second car, a dark color Cadillac, pulled into the parking lot and parked near the driver's side of Williams's car. According to the Beckers, nothing was blocking Williams from leaving the parking lot. The Beckers said that the driver of the Cadillac got out of his car, walked to Williams's car, placed his hands on the driver's door, and began talking to Williams. The Beckers then heard four gunshots and saw the driver of the Cadillac attempt to go back to his car. However, he fell to the ground, and the Beckers then saw Williams get out of his car, stand over the driver of the Cadillac, and shoot him two times. According to the Beckers, Williams then got back in his car and left the scene.
Williams testified on his own behalf. He admitted shooting Martin, but claimed that he did so in self-defense. According to Williams, he had had prior altercations with Martin, and he thought Martin was armed. Williams testified that on Monday, September 30, 2002, a few days before the shooting, Martin, who was 30 years old at the time, had walked toward him holding a gun and that Williams, who was 16 years old at the time, quickly drove away. Martin got in his car and chased Williams. According to Williams, he pulled into McNeal's Carwash on East Broad Street and Martin pulled in right behind him. Williams said that both he and Martin got out of their cars, and that Martin had a *Page 443 
gun in his hand. Williams testified that Martin said that he had heard that Williams had been telling Martin's 15-year-old girlfriend to "forget Big Vic [Martin]" because Martin "ain't doing nothing for her." (R. 201.) Williams told Martin that he did not know what Martin was talking about and he asked Martin to put the gun down, at which point Martin went back to his car and threw the gun on the seat. Williams said that as he was turning to get in his car, Martin hit him on the head two or three times and that he attempted to fight back, but that he fell. According to Williams, "some of the guys at the carwash" broke up the fight and Martin then got in his car and left. (R. 201.) Later that day, Williams reported the incident to the police and identified Martin as his assailant. Thereafter, a complaint was filed alleging that Martin had assaulted Williams, and the City of Gadsden issued an arrest warrant for Martin.[1] (C. 98.)
Williams testified that the next time he saw Martin was on Thursday night when Martin came to Williams's house and asked him to "drop the warrant" because Martin was "looking at 30 years." (R. 203.) Williams testified that Martin indicated that he thought that Williams had told the police that Martin was selling drugs. Martin left after Williams told him that he would talk to his family about not pressing charges. Williams testified that after this encounter with Martin on Thursday night, he obtained a gun "[f]rom a Mexican guy at the store."[2] (R. 235.)
Williams testified that Martin came to his school on Friday and pulled beside Williams's car and that when Williams came out of school to get into his car, Martin opened his window and asked Williams if he was going to drop the charges. Williams stated that he acted like he could not hear Martin and Martin then asked Williams to follow him to the store, but Williams told him no and Martin left. Williams testified that he saw Martin again when he was on his way home; Martin pulled out in front of him, slammed on the brakes, and then proceeded to turn down another street.
Williams testified that on Saturday, October 5, 2002, he was stopped at a stop sign when Martin drove by. As Williams continued driving, Martin pulled in behind him and began to follow him "the exact same way he did . . . when he [had] pulled the gun on [Williams]." (R. 208.) Williams stated that he was afraid of Martin because he had always heard "don't mess with Big Vic" (R. 210), and that after Martin had pulled in behind him, he "sped up . . . [but that Martin] was right behind [him] flashing his lights . . . just begging . . . `Pull over'" (R. 208-09), and that he was worried because he thought that Martin "had called up there and [learned] that [Williams had not] dropped the warrant on him." (R.209.) Williams testified:
 "I turned on East Broad and I went straight on down and I turned to the carwash and he pulled in right — right behind me. And I pulled all the way up and he parked right here by my — by my back door. And he got out of his car and walked around, coming towards me. By then I had opened my door. He kind of walked — walked around toward me, balled up his fist and reached be *Page 444 
hind him as if he was pulling up his pants or something and that's when I opened the door and I shot."
(R. 209.) Williams further testified that "before the car could make a really complete stop [Martin] had already [thrown] his car . . . in park . . . and got out and was walking around towards me with his fist balled up and he reached back behind him." (R. 210-11.) Williams stated that as Martin approached his car, Martin "was walking extremely fast" (R. 211) and that "[he] thought [Martin] had [a gun because, he said, Martin had] had a gun" when Martin had chased Williams to the carwash on a prior occasion. (R. 219.)
Williams also testified that he could not have left the scene even though he had left his car motor running because, he said, he did not have time to "turn back around and put [his car] in gear and drive away" (R. 211); he could not have driven forward because there were cars in the two bays of the carwash in front of him; he did not have enough room to make a turn in front of Martin's car and leave; and he could not get out of his car and run because he "didn't want [Martin] to shoot [him] in the back." (R. 212.) Williams stated that after shooting Martin, he "backed back onto East Broad Street and [he] left" the scene. (R. 213.) When asked on cross-examination what had prevented him from putting his car in reverse, backing out, and leaving the scene after Martin had gotten out of his car and began walking toward Williams's car, the following exchange occurred:
 "[Williams]: There was a stump and a big, big old hole over there. And as I pulled up he pulled up right — and jumped out and . . . walked towards me. If I would have backed up he probably would have shot me through the window.
 "[Prosecutor]: He didn't have a gun, though?
 "[Williams]: I thought he had — he had a gun the first two times."
(R. 219) (emphasis added).
Section 13A-3-23, Ala. Code 1975, provides:
 "(a) A person is justified in using physical force upon another person in order to defend himself or a third person from what he reasonably believes to be the use or imminent use of unlawful physical force by that other person, and he may use a degree of force which he reasonably believes to be necessary for the purpose. A person may use deadly physical force if the actor reasonably believes that such other person is:
 "(1) Using or about to use unlawful deadly physical force; . . .
 "(b) Notwithstanding the provisions of subsection (a), a person is not justified in using deadly physical force upon another person if it reasonably appears or he knows that he can avoid the necessity of using such force with complete safety:
 "(1) By retreating. . . ."
An accused has the right to have the jury charged on "'any material hypothesis which the evidence in his favor tends to establish.'" Ex parte Stork, 475 So.2d 623, 624 (Ala. 1985). "In determining whether an instruction was supported by the evidence the question is not whether the Supreme Court or Court of Criminal Appeals believes the evidence, but simply whether such evidence was presented." Id. "[E]very accused is entitled to have charges given, which would not be misleading, which correctly state the law of his case, and which are supported by any evidence, however weak, insufficient, or doubtful in credibility." Ex parteChavers, *Page 445 361 So.2d 1106, 1107 (Ala. 1978). "'"It is a basic tenet of Alabama law that `a party is entitled to have his theory of the case, made by the pleadings and issues, presented to the jury by proper instruction, . . . and the [trial] court's failure to give those instructions is reversible error.'"'"Ex parte McGriff, 908 So.2d 1024, 1035 (Ala. 2004), quoting Winner Int'l Corp. v. Common Sense, Inc.,863 So.2d 1088, 1091 (Ala. 2003), quoting in turn other cases. "In order to determine whether the evidence is sufficient to necessitate an instruction and to allow the jury to consider the defense, we must view the testimony most favorably to the defendant." Ex parte Pettway, 594 So.2d 1196, 1200
(Ala. 1991).
The State argues that the trial court properly refused to instruct the jury on self-defense because, it says, Williams failed "to produce evidence that Martin was about to use deadly physical force against him when he shot Martin" (State's brief at p. 16), and "failed to produce any evidence that he could not have retreated with complete safety." (State's brief at p. 17.) We disagree.
Contrary to the State's contention, Williams did not have to present evidence that Martin was, in fact, about to use deadly physical force against him; rather, Williams only had to present evidence indicating that he reasonablybelieved that Martin was about to use deadly physical force against him. As this Court explained in King v.State, 478 So.2d 318 (Ala.Crim.App. 1985):
 "The general rule is that `every accused is entitled to have charges given, which would not be misleading, which correctly state the law of his case, and which are supported by any evidence, however weak, insufficient, or doubtful in credibility.' Chavers v. State, 361 So.2d 1106, 1107 (Ala. 1978). If there is 'any evidence, however slight, tending to support' that the defendant acted in self-defense, the issue should be submitted to the jury. King v. State, 71 Ala. 1, 4 (1881). In most cases, the issue of self-defense is one of ultimate fact solely for determination by the jury, Domingus v. State, 94 Ala. 9, 11 So. 190 (1892), however 'unsatisfactory and inconclusive to the judicial mind' the evidence of self-defense may appear. Burns v. State, 229 Ala. 68, 70, 155 So. 561, 562 (1934).
 "However, the court should not instruct on the law of self-defense where there is no evidence to sustain the plea. Raines v. State, 455 So.2d 967, 974 (Ala.Cr.App. 1984); Tarver v. State, 137 Ala. 29, 34 So. 627 (1903); C. Gamble, McElroy's Alabama Evidence, §§ 457.02(5) (3d ed.1977). `[I]n the absence of all evidence having a tendency to show that at the time of the killing the accused was in imminent peril of life, or grievous bodily harm, or of the existence of circumstances creating in his mind a reasonable belief of such peril, . . . these instructions were abstract.' King, 71 Ala. at 4-5. A trial judge may properly refuse to charge the jury on self-defense where he determines that `the defendant could not set up self-defense under the facts.' Consford v. State, 15 Ala.App. 627, 634, 74 So. 740, 743, cert. denied, 200 Ala. 23, 75 So. 335 (1917).
 "In determining whether to charge the jury on self-defense, 'evidence most favorable to the defendant should be considered and if there is the slightest evidence tending to prove a hostile demonstration which can be reasonably interpreted as placing the accused, at the time of the killing, in apparent imminent danger to life or other grievous bodily harm then the matter of self-defense becomes a question for the jury.' Byrd v. State, 257 Ala. 100, 104, 57 So.2d 388, 391 (1952). *Page 446 
 "Before the issue of self-defense is submitted to the jury, the defendant has the burden of proving, among other things, that he `reasonably believe[d],' Alabama Code 1975, §§ 13A-3-23, that his attacker was about to use unlawful deadly physical force, `unless this fact arises out of the evidence produced against him to prove the homicide.' Cosby v. State, 269 Ala. 501, 505, 114 So.2d 250, 253 (1959).
 "'In the absence of evidence tending to show both that the appellant was in actual or apparent imminent peril and that he was unable to retreat, it is assumed that he was not in such peril and that he was able to retreat. It necessarily follows that the accused has the burden of producing evidence warranting both of such findings and that the discharge of that burden is one of the conditions precedent to his being entitled to having his claim of self-defense submitted to the jury. Naugher v. State, 105 Ala. 26, 17 So. 24; Cosby v. State, 269 Ala. 501, 114 So.2d 250.' Payne v. State, 48 Ala. App. 401, 406-07, 265 So.2d 185, 190, cert. denied, 288 Ala. 748, 265 So.2d 192, cert. denied, 409 U.S. 1079, 93 S.Ct. 703, 34 L.Ed.2d 669 (1972).
 "This belief that the assailant is going to use unlawful deadly physical force must be both honestly entertained and reasonable.
 "'The law requires that a belief of imminent peril and urgent necessity to slay in self-defense, though it may be based on appearances, must be both well-founded and honestly entertained. Williams v. State, 161 Ala. 52, 59, 50 So. 59 (1909). A merely "honest" belief, unless a reasonable one, that the killing was necessary, will not make it justifiable.
 "`"It is not an honest, but a reasonable belief, that justifies. An honest may not be a reasonable belief; it may be the offspring of fear, alarm or cowardice, or it may be the result of carelessness, and irrational. A reasonable belief, generated by the attendant circumstances — circumstances fairly creating it — honestly entertained, will justify a homicide; but not an irrational belief, however honest it may be." Holley v. State, 75 Ala. 14, 19 (1883).' Howard v. State, 420 So.2d 828, 832
(Ala.Cr.App. 1982).
 "'The question is not merely what the defendant believed, but also, what did he have the right to believe.' Alabama Code 1975, §§ 13A-3-23
Commentary.
 . . . .
 "However, `[t]he reasonableness of an apprehension of death or great bodily injury is a question of fact for the jury.' F. Wharton, The Law of Homicide, §§ 287 at 462 (3d ed.1907). `[I]t is a question for the jury to satisfy itself from all the evidence in the case whether or not the defendant was in imminent and manifest danger either of losing his own life or of suffering grievous bodily harm, or that it appeared so to the mind of a reasonable man.' Dilburn v. State, 16 Ala.App. 371, 372, 77 So. 983, 984
(1918). See also Kennedy v. State, 240 Ala. 89, 196 So. 884 (1940); Moore v. State, 54 Ala.App. 22, 304 So.2d 263, cert. denied, 293 Ala. 768, 304 So.2d 268 (1974); Sterrett v. State, 31 Ala.App. 161, 13 So.2d 776, cert. denied, 244 Ala. 367, 13 So.2d 780 (1943).
 . . . .
 "Whether the accused reasonably believes that another person is using or is about to use unlawful deadly physical force against him is a question for the jury. `The law requires that the circumstances *Page 447 
should be such as to create a reasonable belief of impending necessity. These circumstances are to be ascertained by the jury . . . ` Oliver v. State, 17 Ala. 587, 599 (1850). `It is solely for the jury to determine whether any particular inference that may possibly be drawn from given facts is or is not a reasonable inference, and not for the court to substitute its judgment for theirs in passing upon the character of inferences afforded by the evidence.' Domingus v. State, 94 Ala. 9, 13, 11 So. 190, 192 (1892) (error to charge jury that from certain facts they might reasonably infer that defendant was not in imminent danger).
 "'The law of self-defense makes use of (1) rules, and (2) the reasonable-person standard. The court determines what the rules are, but it is for the jury to determine whether the standard has been met by the evidence in the particular case.' R. Perkins R. Boyce, Criminal Law 1116 (3d ed.1982). `It is to be noted that reasonableness is determined by a standard — a reasonable person under like circumstances — and the determination is made by the jury.' Perkins, at 1117. `A self-defense . . . instruction should be given when any evidence is given showing the defendant's subjective belief that the use of force was necessary.' Perkins, at 1115-16, quoting People v. Lockett, 82 Ill.2d 546, 45 Ill.Dec. 900, 903, 413 N.E.2d 378, 381 (1980)."
478 So.2d at 319-22 (emphasis added).
Similarly, in Lemley v. State, 599 So.2d 64
(Ala.Crim.App. 1992), this Court stated:
 "If there is any evidence to show a hostile demonstration that can be reasonably considered as having placed the accused in apparent imminent danger of his life, the issue of self-defense is for the jury. Turner v. State, 160 Ala. 40, 43, 49 So. 828, 829
(1909). 'The question
as to whether or not the circumstances in which the partieswere at the time the fatal blow was stricken were such as toimpress a reasonable man that the defendant was in imminentdanger of losing his life or suffering great bodily harm, andwhether or not the defendant entertained such belief wereinferential facts to be drawn by the jury.' Kennedy v.State, 240 Ala. 89, 91, 196 So. 884, 885 (1940).Whether the accused was in imminent peril at the time heshot the victim is a question of fact for the jury. Cook v.State, 46 Ala.App. 663, 665, 248 So.2d 158, 160 (1971).It is solely for the jury to determine whether theinference that accused was in actual or apparent immediateperil is reasonable. Domingus v. State, 94 Ala. 9, 13,11 So. 190, 192 (1891).
 " 'The rule of self-defense is that persons may and must act on the reasonable appearance of things. While it is not required that where a person is menaced he must wait until a weapon is presented ready for deadly execution, yet the danger must be real or so manifestly apparent as to create a reasonable belief of presently impending peril to life or limb. In determining this question evidence most favorable to the defendant should be considered and if there is the slightest evidence tending to prove a hostile demonstration which can be reasonably interpreted as placing the accused, at the time of the killing, in apparent imminent danger to life or other grievous bodily harm then the matter of self-defense becomes a question of fact for the jury.'
"Byrd v. State, 257 Ala. 100, 104, 57 So.2d 388,391 (1952). See also Raines v. State, 455 So.2d 967,974 (Ala.Cr.App. 1984)." *Page 448 599 So.2d at 74 (emphasis added). See also Ex partePettway, supra, and Mordecai v. State,858 So.2d 993 (Ala.Crim.App. 2003).
There was evidence presented, specifically Williams's own testimony, when viewed in a light most favorable to Williams, from which the jury could have concluded that Williams reasonably believed that Martin was about to use deadly physical force against him. Williams testified about prior altercations with Martin, including one in which Martin brandished a gun. Martin had previously assaulted Williams, and a warrant had been issued for Martin's arrest. Williams said that on the day of the shooting he was afraid that Martin had learned that he had not dropped the charges stemming from the prior altercation; that when he stopped at the carwash, Martin pulled in behind him, jumped out of his car, and walked quickly toward him; and that as Martin was walking toward him, he saw Martin reach back behind his back. Although Williams testified that he did not see a weapon and he described Martin's actions as "reach[ing] back behind him as if he was pulling up his pants" (R. 209), Williams testified that he thought that Martin had a gun because Martin had had a gun on the prior occasion when he had chased Williams to the carwash and that he was afraid of Martin. This evidence, however weak or doubtful in credibility it may be, indicated that Williams believed that Martin was about to use deadly physical force against him; whether that belief was reasonable under the circumstances was a question for the jury.
Likewise, there was evidence presented indicating that Williams could not have "avoid[ed] the necessity of using [deadly physical] force with complete safety . . . [b]y retreating." §§ 13A-3-23(b)(1), Ala. Code 1975.
 "'[A] person is not justified in using deadly physical force upon another person if it reasonably appears or he knows that he can avoid the necessity of using such force with complete safety: (1) By retreating.' Alabama Code 1975, §§ 13A-3-23(b). `As a general rule, the accused is not entitled to have his claim of self-defense submitted to the jury if the undisputed evidence shows clearly any of the following: . . ., that the accused was able to retreat. . . .' C. Gamble, McElroy's Alabama Evidence §§ 457.02(5)(a) (3rd ed.1977). `In the absence of evidence warranting a finding both that the accused was in actual or apparent imminent peril and that he was unable to retreat, it is assumed that he was not in such peril and that he was able to McElroy at §§ 457.02(5)(b). 'Where the accused claims the [use of deadly physical force] was in self-defense, the onus rests on him to show that he could not safely retreat without increasing or apparently increasing his peril' McDonald v. State, 340 So.2d 80, 84 (Ala.Cr.App.), cert. denied, 340 So.2d 84 (Ala. 1976)."
Weaver v. State, 500 So.2d 1278, 1279
(Ala.Crim.App. 1986) (emphasis added). An instruction on self-defense is warranted if there is evidence, however weak or doubtful in credibility, indicating that the defendant could not, or it reasonably appeared from the circumstances that the defendant could not, retreat with complete safety, i.e., without increasing or apparently increasing his peril. The question of whether one could have retreated is one of reasonableness and, thus, is necessarily a question for the jury.
Viewed in the light most favorable to Williams, the evidence indicated that Williams did not believe that he could retreat with complete safety. Although after the shooting, Williams did, in fact, back his *Page 449 
car up and leave the scene, Williams testified that when Martin was approaching him, he did not think that he could get out of his car and run because he was afraid that Martin would shoot him in the back, and he testified that he did not think that he could back up his car and leave the scene, as he did after the shooting, because he was afraid that Martin would shoot him through the window of his car. Based on this testimony, the jury could have concluded that Williams could not, or that it reasonably appeared that he could not, retreat with complete safety, i.e., without increasing or apparently increasing his peril.
Because there was evidence presented to support Williams's claim that he acted in self-defense, this issue should have been submitted to the jury so that the jury could make the determination, based upon all the evidence presented at trial, whether Williams acted in self-defense. Therefore, the trial court erred in denying Williams's request for a jury instruction on self-defense.
Moreover, we cannot say that the error was harmless. The jury was charged on murder as alleged in the indictment and on provocation manslaughter as a lesser-included offense of murder. The jury deliberated for over eight hours before reaching its verdict and finding Williams guilty of the lesser of the charges submitted to it for consideration — manslaughter. During its deliberations, the jury asked three questions, including the following: "May we please have the exact legal definition of self-defense?" (C.Supp.4.) The State is correct in its assertion that
 "merely because the jury asked the court what the definition of self defense was, Suppl. R. at 4, does not mean [that] the trial court erred by not charging the jury on self defense because a layman's understanding of self defense is probably different from the legal requirements justifying a jury charge on self defense."
(State's brief at pp. 18-19.) However, the jury's question does indicate that it may have credited Williams's testimony regarding the circumstances of the crime and his claim of self-defense. After thoroughly reviewing the record in this case, we are convinced that the failure to charge the jury on self-defense, when that charge was supported by evidence presented at trial, was not harmless.
Based on the foregoing, the judgment of the trial court is reversed and this cause remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.
McMILLAN, P.J., and COBB, BASCHAB, and WISE, JJ., concur.
[1] Although Williams testified at trial that the incident occurred on Monday, September 30, 2002, and that he filed the complaint on Wednesday, October 2, 2002, the complaint contained in the record indicates that it was executed on October 3, 2002, and it states that the incident occurred on October 1, 2002 (C. 98-100.)
[2] In his testimony, Williams refers to this store as "the Crown." (R. 235.)